# Wytheville.

## W. MAZER v. COMMONWEALTH.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. JUDGES—*Jury—Questions of Law and Fact—Functions of Judge and Jury—Expression of Opinion Upon Weight of Evidence—Directing Verdict.*—Under our system of criminal procedure the functions of the judge and jury are wholly separate and distinct. The judge presides at the trial, and, amongst other things, decides all purely legal questions that arise, including the admissibility of evidence, but he can express no opinion upon the weight of the evidence, or the credibility of the witnesses. These are matters solely for the consideration of the jury. The rule applies in civil as well as criminal cases, and no matter how plain a case may be upon the facts, the trial court cannot direct a verdict, except on a pure question of law.

2. JUDGES—*Questions of Law and Fact—Expression of Opinion Upon Weight of Evidence or Credibility of Witnesses—Reversible Error.*—The courts and the legislature of this State have been extremely jealous of any expression of opinion by the trial judge upon the weight of the evidence or the credibility of witnesses. Such expressions have been uniformly held to constitute reversible error.

3. CRIMINAL LAW—*Witnesses—Question by Court to Witness Implying Lack of Faith in Her Testimony—Case at Bar.*—In the instant case, a prosecution for a violation of the prohibition act, only two witnesses testified for the defendant on the merits of the case—himself and his daughter. They both testified that the liquor found on defendant's premises was kept for the use of himself and his wife in case of sickness. The daughter testified that her father suffered from toothache and used liquor to relieve it, and that her mother was sick at times and her father gave her liquor to relieve her. Thereupon the judge interrupted and asked, "wasn't your mother in this court all day yesterday at the trial of Sherman?" and "didn't she go on the bond of Sherman, who was convicted in this court last night?" To which witness replied "yes." Sherman was a brother-in-law of the wife of defendant and had been convicted on the previous day for a violation of the prohibition law. Four of the jurors who sat in Sherman's case were also jurors at the trial of defendant. Defendant proved

an excellent character, and yet the jury gave him the maximum punishment prescribed by law for the offense.

*Held:* That this action of the court constituted reversible error.

4. Witnesses—*Questions by Trial Judge.*—A trial judge may ask questions of a witness either on his examination in chief or on cross-examination. The practice is common and perfectly permissible. Indeed, there are times when it is his duty to do so. He is not to sit there and see a failure of justice on account of omissions to prove facts plainly within the knowledge of a witness, but the character of his questions should not be such as to disclose bias on his part, or to discredit the truthfulness of the witness.

Error to a judgment of the Hustings Court of the city of Richmond.

*Reversed.*

The opinion states the case.

*Benjamin Lovenstein, Rebecca P. Lovenstein, McC. G. Finnigan,* and *English & Moss,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

Burks, J., delivered the opinion of the court.

The plaintiff in error was convicted of a violation of the prohibition law (Acts 1918, chapter 388) in having unlawful possession of a quart and a half of liquor, and sentenced to jail for six months and to pay a fine of five hundred dollars—the highest penalty prescribed by law for his offense. There are several assignments of error in the petition, but all of them were waived at the bar, on the oral argument, except the one hereinafter discussed.

Only two witnesses testified for the defendant, Mazer, on the merits of the case. They were the defendant and his daughter, Sarah Mazer. Their testimony is

certified in narrative form, and, so far as pertinent, is as follows:  The defendant testified that he "voluntarily told said officers that he had a little ardent spirits in a safe in his kitchen downstairs, and took them down into the kitchen, personally opened the door to the safe and extracted the vinegar bottles containing about one and one-half quarts, referred to above; that he explained he had said liquor there for his own personal use, and used it for medicinal purposes since he suffered with disease of the gums and teeth, and rheumatic pains, or neuritis, in his right arm, and that his wife was addicted to fainting spells and was sick at times; that he never sold a drop of liquor in his life to anyone.  Defendant further testified that he had never before been in court charged with any offense.

"Defendant introduced his daughter, Sarah Mazer, as a witness, and she testified that her mother was sick at times and that her father gave her liquor to relieve her suffering, that he (her father), the defendant, was suffering with acute pains in his teeth and gums, as well as neuritis or rheumatic pains in his right arm, the rubbing of his arm and gums with ardent spirits being frequently resorted to by him to relieve his pains."

The following facts and admissions appear in bill of exception No. 2, made a part of the record:  While Sarah Mazer, a witness called by the defendant to testify in his behalf, was so testifying, counsel for the accused asked said witness the following questions:

"Q. Isn't it a fact that your father suffers with acute pains in his teeth, and uses liquor at times to relieve it?

"A. Yes.

"Q. Isn't your mother sick at times, and doesn't your father give her liquor from time to time to relieve her said sickness?

"A. Yes."

Thereupon the judge interrupted and asked the witness this question:

"Q. Wasn't your mother in this court all day yesterday at the trial of Sherman?

"A. Yes, sir.

"Q. Didn't she go on the bond of Sherman, who was convicted in this court last night?

"A. Yes."

"Witness further testified that H. Sherman was her mother's brother-in-law. Counsel for the accused objected to the questions and asked that both questions and answers be stricken out as being prejudicial, and calculated to prejudice the accused in the minds of the jury.

"It is admitted that H. Sherman, who is referred to as Sherman in the above mentioned questions, was, after a trial consuming the entire court session the day before, namely, May 15, 1924, was convicted for violation of the prohibition law and given a term of punishment therefor of six months' confinement in the city jail and assessed a fine of one hundred dollars. But there was no connection between the cases of Sherman and this case.

"It is admitted that four of the jurors who sat as jurors in the trial of the defendant, W. Mazer, were of the twelve jurors who sat the day previous in the trial of H. Sherman for a violation of the prohibition law."

The action of the trial judge set forth in bill of exception No. 2 is the only assignment of error relied on for reversal.

[1] Under our system of criminal procedure the functions of the judge and jury are wholly separate and distinct. The judge presides at the trial and, amongst other things, decides all purely legal questions that

arise, including the admissibility of evidence, but he can express no opinion upon the weight of the evidence, or the credibility of the witnesses. These are matters solely for the consideration of the jury. The rule applies in civil as well as criminal cases, and no matter how plain a case may be upon the facts, the trial court cannot direct a verdict, except on a pure question of law. Code, section 6003; *Small* v. *Va. Ry. & P. Co.,* 125 Va. 416, 99 S. E. 525. Even in a criminal case it has been held that "it is not the practice of the courts of this State to give instructions which amount in substance to telling the jury that the evidence is not sufficient to convict a prisoner, and such instructions should not be given." *Montgomery* v. *Commonwealth,* 98 Va. 852, 37 S. E. 1.

[2] The courts and the legislature of this State have been extremely jealous of any expression of opinion by the trial judge upon the weight of the evidence or the credibility of witnesses. Such expressions have been uniformly held to constitute reversible error. *Torbert* v. *At. C. L. R. Co.,* 122 Va. 682, 95 S. E. 635; *Gottlieb* v. *Comth.,* 126 Va. 807, 101 S. E. 872; *Bear* v. *Bear,* 131 Va. 447, 109 S. E. 313; *At. Coast R. Co.* v. *Robertson,* 135 Va. 247, 116 S. E. 476; *Petherbridge* v. *Princess Anne County,* 136 Va. 54, 65, 116 S. E. 359.

The high official position of the trial judge in a criminal case gives great weight, with the jury, to his words and conduct, and it is incumbent upon him to guard against any manifestation of his opinion either upon the weight of the evidence or the credibility of the witnesses. "All expressions of opinions, or comments, or remarks, upon the evidence, which have a tendency to intimate the bias of the court with respect to the character or weight of the testimony, particularly in criminal cases, are watched with extreme jealousy and

generally considered as invasions of the province of the jury." *Dejarnette* v. *Commonwealth*, 75 Va. 867, 874. He should preside with impartiality and "not express or intimate an opinion as to the credibility of a witness or as to controverted facts." There are numerous cases to this effect. *Whitelaw* v. *Whitelaw*, 83 Va. 40, 1 S. E. 407; *Petherbridge* v. *Princess Anne County, supra; Sharp* v. *State*, 51 Ark. 147, 10 S. W. 228, 14 Am. St. Rep. 27; *McMinn* v. *Whelan*, 27 Cal. 300, 319; *Gribble* v. *State*, 85 Tex. Cr. R. 52, 210 S. W. 215, 3 A. L. R. 1096; *Myers* v. *State*, 99 Miss. 263, 54 So. 849; Note 10 A. L. R. 1116. The latest case on the subject, fully sustaining these views, is *State* v. *Bryant*, 189 N. C. 112, 126 S. E. 107.

In *Walling* v. *State*, 59 Tex. Cr. R. 279, 128 S. W. 625, the trial judge said that he did not see what the answer to a certain question had to do with the case, or that it was material one way or the other. In reversing the case, the appellate court said: "This may have had a serious bearing upon the case, especially in view of the fact that appellant was awarded the maximum punishment."

[3] In the instant case, the questions propounded to the witness by the court were irrelevant to the issue, and the admission in the brief of the Attorney-General shows that their effect was to convey to the jury the information that the judge did not believe that the witness was telling the truth. He says: "It is true that the question had a tendency to test the accuracy of the evidence of the witness. To that extent it implied a lack of faith in the truth of her testimony." This brings the questions within the prohibitions of the law.

Four out of the five jurors who tried Sherman the day before sat on the jury that tried Mazer. Mazer proved an excellent character, and yet the jury gave

him the maximum punishment.   As said of the remarks of the judge in *Walling* v. *State, supra,* the questions asked by the court may have had a serious bearing on the case "in view of the fact that appellant was awarded the maximum punishment."

[4] It is not to be inferred from what has been said that a trial judge may not ask questions of a witness either on his examination in chief or on cross-examination.   The practice is common and perfectly permissible.   Indeed, there are times when it is his duty to do so.   He is not to sit there and see a failure of justice on account of omissions to prove facts plainly within the knowledge of a witness, but the character of his questions should not be such as to disclose bias on his part, or to discredit the truthfulness of the witness. In 16 C. J. section 2100, page 831, it is said:

"For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put the questions to a witness either on his examination in chief or on his cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness."

See also *Adler* v. *U. S.,* 182 Fed. 464, 104 C. C. A. 608, for the rule in the Federal courts, where much greater power is given to trial judges than in this and most of the States.

It would not be proper to conclude this opinion without saying that the error of the trial judge was inadvertent in the rush of the trial of one of the many cases which crowded his docket.   He is one of the ablest and most experienced judges on the bench and has probably presided at more criminal trials than any other judge in the State.   He is a man of the highest character and of the strictest integrity, and would be incapable of intentionally exercising any improper influence over a jury.

For the error pointed out the judgment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded to the trial court for a new trial.

*Reversed.*

WEST, J., dissenting:

I cannot concur in the majority opinion in this case.

The judgment of the trial court is reversed solely because the trial judge asked the witness, Ida Mazer, these questions:

"Q. Wasn't your mother in this court all day yesterday at the trial of Sherman?   A. Yes, sir.

"Q. Didn't she go on the bond of Sherman, who was convicted in this court last night?   A. Yes."

Testifying for the defendant, this witness had just stated that her mother was sick at times and that her father, the defendant, gave her whiskey to relieve her sickness. The condition of his wife's health being thus put in issue, the defendant cannot complain of a question which elicited the fact that she was well enough to be in court all day the day before the trial.

The credibility of defendant's witness, Ida Mazer, and the weight of her testimony were questions for the jury. They were to consider her interest, her prejudices, her bias, if any. Her home environment would tend to shed light upon these questions. The fact that her mother, in charge of her home, was a woman who sat in court all day the day before, watching the trial of a party charged with violating the prohibition law, and signed his bond as surety when he was convicted, was a circumstance, though small, which the jury might properly consider along with all the other facts and circumstances of the case, in determining the weight to be given to the testimony of the witness.

It is conceded by the opinion that the judge has the right to propound questions to a witness, either on his examination in chief, or on his cross-examination, for the purpose of eliciting evidence which has not been otherwise brought out.

The trial judge has not, by words or conduct, expressed any opinion, either upon the credibility of the witness or the weight of her testimony, and this court should not reverse the judgment on that ground unless it plainly appears that he has.

I cannot agree with the majority that the questions asked the witness were irrelevant to the issue; but, if they were, the error was *de minimis* and was not prejudicial.

I think the judgment should be affirmed.