# Wytheville

DORA PINN V. COMMONWEALTH.

June 11, 1936.

Present, All the Justices.

The opinion states the case.

*Paul H. Coleman,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

EGGLESTON, J.,* delivered the opinion of the court.

This writ of error brings under review the proceedings at the trial of Dora Pinn, who was convicted of receiving stolen goods, knowing them to have been stolen, and sentenced to four years in the penitentiary.

Since no claim is made that the evidence is insufficient to sustain the jury's verdict, we shall state only such facts as are necessary to clearly understand the assignments of error.

During the month of February, 1935, there occurred a series of thefts from express trucks standing in the Southern Railway station at Lynchburg. The goods stolen were

---

*Due to circumstances over which we had no control, it was necessary to re-assign the writing of this opinion. This accounts for the delay in the decision.

principally women's garments. It developed that the actual thefts were committed by three negro boys, Robert Shelton, James Shelton and Charles Parker, all between fifteen and seventeen years of age.

Upon their arrest the three boys promptly implicated the accused, Dora Pinn, a colored woman, who operated a restaurant in Lynchburg. According to the boys the thefts were committed at the instance of the accused to whom the stolen goods were by them sold and delivered, for disposal by her and her step-daughter, Thelma Pinn.

Under a search warrant some of the stolen articles were found on the premises of the accused. There were other circumstances corroborative of the boys' testimony. On the other hand the accused denied the charge and produced testimony from which the jury might have absolved her of guilt.

Viewing the assignments of error as a whole, they present the claim that the accused has not had the fair and impartial trial to which she is entitled.

The first assignment of error challenges the action of the lower court in allowing the Commonwealth to prove, by three police officers and detectives, that shortly after the arrest of the accused she was confronted by the three boys, who, in her presence, charged her with participation in the crime and narrated her alleged acts in connection therewith. One of the detectives was allowed to state in detail what the boys had said in the presence of the accused. This testimony was admitted over the objection of the defendant, although each witness further testified that she emphatically denied the boys' accusations.

By the great weight of authority the prosecution may introduce in evidence statements made in the presence of a person, charging him with a crime, where such statements are heard and understood by the accused and yet are not denied by him. The theory is that his silence, when he naturally would deny such an accusation, is an acquiescense in the truth of the statements and an implied admission of guilt. The statements then become

admissible as an exception to the hearsay evidence rule. Wigmore on Evidence (2d Ed.), vol. 2, section 1071, p. 554; Jones Commentaries on Evidence (2d Ed.), vol. 3, section 1044, p. 1923; 1 R. C. L., p. 478, section 15; *State* v. *Booker,* 68 W. Va. 8, 69 S. E. 295; *People* v. *Harrison,* 261 Ill. 517, 104 N. E. 259.

But where the accused denies the charge there is no acquiescence in its truth and no implied admission of guilt. Therefore, it is equally well settled that such statements, when denied by the accused, are inadmissible.

"It ought not to be necessary to note that the party's *denial* of the third person's statement destroys entirely the ground for using it." Wigmore on Evidence (2d Ed.), vol. 2, section 1072, p. 564. See also, 22 C. J., p. 326, section 362, note 3 (a); *Commonwealth* v. *Mazarella,* 279 Pa. 465, 124 A. 163; *People* v. *Harrison,* 261 Ill. 517, 104 N. E. 259; *Commonwealth* v. *Kosior,* 280 Mass. 418, 182 N. E. 852; *State* v. *D'Adame,* 84 N. J. Law 386, 86 A. 414, Ann. Cas. 1914B, 1109.

In the two cases last cited the introduction of such statements under circumstances almost identical with those in the case at bar was held to be prejudicial error. The same is true here.

The accused next claims to have been prejudiced by the conduct and remarks of the trial judge disclosed by the following incident: During his rebuttal testimony one of the boys, Charles Parker, suggested that Harry Pinn, a step-son of the accused and one of her principal witnesses, had attempted to intimidate him. Thereupon this colloquy took place:

"By the Court:

"Q. What is the name of that man?

"A. Harry Pinn.

"By Mr. Coleman: He is in the court room.

"By the Court: [presumably to the Commonwealth's Attorney]: Will you issue a rule against Harry Pinn, returnable forthwith to show cause why he shouldn't be attached and punished for contempt in intimidating this witness, Charles Parker?

"By Mr. Coleman: Your Honor, I desire to except to the court's remarks in the presence of the jury as indicating that this witness, Charles Parker, has told the truth.

"By the Court: It doesn't indicate anything of the sort. If any witness on the stand testifies somebody has intimidated him this court will issue a rule to inquire into the truth of it. I don't tell the jury it is true but I am proceeding to have that matter investigated. It has nothing to do with this case at all.

"By Mr. Coleman: I still contend for my exception, sir."

We think this incident and these remarks in the presence of the jury were prejudicial to the accused. The jury might well have concluded therefrom that the presiding judge believed the charge that Harry Pinn, the step-son of the accused, was attempting to intimidate one of the Commonwealth's principal witnesses. They were well calculated to highly discredit, in the eyes of the jury, the alleged offender, Pinn, an important witness for the defense.

There are other assignments of error directed at the conduct and remarks of the presiding judge in the presence of the jury. These will not be detailed. Examined in its particular setting we find none of them to constitute reversible error. And yet the aggregate of these, taken in connection with the indictment just related, might have led the jury to believe that the trial court had little confidence in the credibility of the defendant's witnesses and slight faith in her cause.

As Judge Burks said in *Mazer* v. *Commonwealth,* 142 Va. 649, 653, 128 S. E. 514, 515: "The high official position of the trial judge in a criminal case gives great weight, with the jury, to his words and conduct, and it is incumbent upon him to guard against any manifestation of his opinion either upon the weight of the evidence or the credibility of the witnesses. 'All expressions of opinions, or comments, or remarks, upon the evidence, which have a tendency to intimate the bias of the court with

respect to the character or weight of the testimony, particularly in criminal cases, are watched with extreme jealousy and generally considered as invasions of the province of the jury.' *Dejarnette* v. *Commonwealth*, 75 Va. 867, 874. He should preside with impartiality and 'not express or intimate an opinion as to the credibility of a witness or as to controverted facts.' There are numerous cases to this effect."

The next assignment of error is that the court allowed the Commonwealth to introduce in evidence certified copies of two indictments and orders of the Circuit Court of Buckingham county, Virginia, showing that the accused had been convicted in that court of aiding and procuring one F. L. Lander, Jr., in making a false sworn statement in connection with claims under two life insurance policies.

In substance the indictments charge that on a certain date F. L. Lander, Jr., wilfully made a false and fraudulent statement in writing, duly signed and sworn to by him before a notary public, of a material fact as to the death of one Howell Reid, for the purpose of procuring payment of the benefits under two policies on the life of Reid.

The indictments further charge that the accused, Dora Pinn, did "feloniously counsel, hire, procure, aid and abet the said F. L. Lander, Jr., to do and commit the felony aforesaid." The court orders show that she plead guilty to the charge and was fined the sum of $25 in each case.

Code, section 4779 provides: "Conviction of felony or perjury shall not render the convict incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit."

The Commonwealth claims that the indictments and orders were admissible under this section to impeach the credibility of the accused. Counsel for the accused reply that these records show that she was convicted of neither a felony nor perjury, but merely of a misdemeanor for which she was fined $25, and hence the indictments and

orders were inadmissible. *Smith* v. *Commonwealth,* 155 Va. 1111, 1121, 156 S. E. 577.

The indictments against Lander were under the latter portion of section 4459b of Michie's Code of 1930 (Acts of Assembly 1922, p. 542). It is therein provided that one committing the acts charged in the indictment "shall be guilty of perjury, and shall be proceeded against and punished as provided by the statutes of this State in relation to the crime of perjury."

Under the indictments Dora Pinn was charged with subornation of perjury, which is punishable under Code, section 4494, by confinement in the penitentiary; or, in the discretion of the jury, by a jail sentence, or fine, or both. The offense with which she was charged, being *punishable* by confinement in the penitentiary, was a felony although she, in fact, received a less punishment. Code, section 4758; *Fletcher* v. *Commonwealth,* 163 Va. 1007, 1012, 1013, 175 S. E. 895, 95 A. L. R. 1112.

The indictments and orders were properly admitted in evidence. Therefore, there is no merit in this assignment.

The accused next complains of the action of the court in limiting the argument of her counsel to thirty minutes. It is pointed out that the trial consumed a day and a half; that twenty-eight witnesses testified in chief; that fifteen were heard in rebuttal; and that the testimony covered two hundred and fifty typewritten pages.

Since the case must be reversed for other reasons it is not necessary that we stop to discuss whether such limitation was reversible error. Furthermore, in view of what was recently said on the subject in *Jerrell* v. *Norfolk & Portsmouth Belt Line R. Co.,* ante, page 70, 184 S. E. 196, it is unlikely that the argument at the re-trial of the case will be so restricted.

For the reasons stated, the judgment of the lower court is set aside and the case is remanded for a new trial.

*Reversed and remanded.*