# 𝔖taunton

## BILL WILLIS V. COMMONWEALTH.

September 6, 1944.

Record No. 2867.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred B. Greear* and *A. M. Phipps,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the ·Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Willis was tried upon an indictment which charged that he "with force and arms, in and upon Flora Barton * * * violently and feloniously. did. make an assault; and her the said Flora Barton then and there * * * feloniously did ravish and carnally know, against her will and by force * * * ."

Upon this indictment he was arraigned. He pleaded not guilty and a trial by jury was had. Upon the conclusion of the evidence and the arguments of counsel, the jury brought in a verdict of guilty and fixed his punishment at five years' confinement in the penitentiary.

The motion to set aside the verdict was overruled by the trial court and judgment was entered thereon.

It is assigned as error that the court erred in refusing to grant the accused a continuance of the case because of the absence of an alleged material witness.

■ It is the settled rule of law ·in this Commonwealth that a motion for a continuance is addressed to the sound discretion of the trial court, and that this court will not reverse the trial court's action unless it be plainly erroneous. See *Rosenberger* v. *Commonwealth,* 159 Va. 953, 166 S. E. 464, and authorities cited.

The record clearly discloses that the evidence which would have been adduced, had the witness been present, was purely cumulative, and no possible injury was suffered by the accused in this respect.

■ The assignment is without merit.

It is assigned as error that the court erred in refusing to give to the jury this instruction:

"The court instructs the jury that evidence of good character is highly important, if the case is one of reasonable doubt, and good character should make it preponderate in favor of the accused."

The instruction was amended by the court by eliminating the word "should" and substituting therefor the word "may."

The case of *Vaughan* v. *Commonwealth,* 85 Va. 671, 8 S. E. 584, is relied upon to sustain the contention of the accused. An examination of that case discloses that a similar instruction was, without objection, given on behalf of the accused. Since no objection to the instruction was urged in the lower court, the Commonwealth was estopped to raise any objection in this court.

In the opinion of the court there is no comment whatever necessary upon the correctness of the instruction. Had there been any conclusion reached in regard to the instruction, no doubt it would have been the same conclusion which the trial court reached in deciding the identical question here presented.

In *Lufty* v. *Commonwealth*, 126 Va. 707, 712, 100 S. E. 829, the accused asked for this instruction:

"The court instructs the jury that the character of the accused when proven in a case, whether good or bad, is a fact to be considered by them, and if the jury from the evidence have any doubt as to the guilt of the accused, then the evidence of his good character *should* resolve that doubt in his favor, and you should acquit him."

The court refused to give the instruction as offered and substituted the following:

"The court instructs the jury that the character of the accused when proven in a case, whether good or bad, is a fact to be considered by them, and if the jury from the evidence have any reasonable doubt as to the guilt of the accused you should acquit him."

In holding that no reversible error was committed by the trial court, Judge Kelly said: "A 'reasonable doubt' always entitles a defendant in a criminal prosecution to an acquittal, and it is proper in a case where there is 'any doubt' as to his guilt to tell the jury that evidence of good reputation 'is a fact to be considered by them' or 'may be allowed to resolve the doubt in his favor;' but it is not proper to practically take the case from the jury by instructing them that upon such evidence 'they should resolve the doubt in his favor and should acquit him.' The instruction as given in this case was substantially the same as the one approved in *Waddey's Case*, 98 Va. 810, and in Phillips on Instructions."

There is no merit in this assignment of error.

The remarks of the trial judge, made in the presence of the jury, and the action taken by him while the prosecutrix, Flora Barton, was under cross-examination are assigned as error.

It appears from the record that Flora Barton, a robust young woman eighteen years of age, left her father's home on the afternoon preceding the alleged rape, to go to the home of a Mrs. Puckett in Haysi, Virginia, who was her employer. Instead of going to the home of her employer, she and a young man named Roy Taylor, whom she had met

the day before, after spending quite a while together in the town, walked out to a school house situated upon the outskirts thereof. The record is not clear as to how long they spent at the school house, but it is shown that Miss Barton returned to the town between the hours of 12 and 1:30 a. m. She testified that when she arrived in town she saw the accused, Jack Willis, and Gene Willis, and though unacquainted at the time, she informed them that she had been raped by Roy Taylor and inquired where she could find an officer of the law. She further testified that she did not contact an officer but proceeded on her way home; that she was followed by four or five men to a place near the school house, and after rejecting an improper proposal made by one of the men, she proceeded on her way when she was attacked by two of the men and ravished; that she reached her home between 4:30 and 5 a. m., and informed her parents of the occurrence; that she went with her parents to Haysi to ascertain, if she could, who her assailants were, as she did not know any of them personally and could only identify them by the names she heard them call each other, except that she observed one of her assailants had some teeth missing. The record further discloses that Roy Taylor was tried and convicted on the 15th of November, 1943; that the accused was tried on the 17th of November and his conviction followed on the 19th of November, 1943.

The only viewpoint we have is that which is shown by the record. In her examination in chief the prosecutrix had endeavored to identify her alleged attackers, and this, in the opinion of the representatives of the Commonwealth, she had done. It is thus to be observed that the crux of the case was a question of identity. She had testified that one of her assailants was Jack Willis. In an effort to break down this statement, this took place during the cross-examination:

"Q. You don't know it was Jack?

"A. I saw him afterwards.

"Q. But you had to ask somebody who he was?

"A. After I had told Daddy them was the boys, he asked somebody.

"Q. After you had told your Daddy who they were, why did he ask who they were?

"By the Court:

"That is unfair. The court will interpose a protection for her.

"By Mr. Greear:

"We except to the statement of the court.

"By the Court:

"We will take a recess, it is trying on a girl of that age to undergo a cross-examination like this.

"By Mr. Greear:

"We move for a mistrial.

"By the Court:

"(To the witness) You may go into that room and rest a while.

"Whereupon the witness retired from the court room and the jury also retired to its room * * * ."

The assistant attorney general relies upon the rule stated in *Slade* v. *Commonwealth*, 155 Va. 1099, 156 S. E. 388, to sustain the action of the trial judge. In that case the accused, Slade, was tried upon an indictment charging the illegal manufacture of liquor. In the opinion of Mr. Justice Gregory, this is said:

"In the cross-examination it clearly appears that counsel was attacking the credibility of the witness Bass. He was impressing upon Bass the fact that he knew that Bass had been previously convicted of violating the prohibition law, and that Bass, being conscious of the fact that counsel did know of the previous violations, was telling the truth about it, only because counsel was in position to prove him a falsifier if he did not tell the truth. It was unfair cross-examination. Nothing had taken place in the trial which justified an attack on the veracity of the witness and when it was made, the trial judge was justified in protecting him.

"The purpose of cross-examination is to bring out the truth and it necessarily must be left to the discretion of the

trial judge. There are proper limits to cross-examination. When the Commonwealth offers witnesses in the trial of criminal cases, they are entitled to the protection of the court from improper insinuations against their character.

"We cannot, in any view of the case, see how the accused was prejudiced by these incidents in the trial of this cause.

"The judgment of the court is affirmed."

That case is distinguishable from the case at bar. In the case at bar the accused is a man thirty-three years of age, married and the father of one child. A laborer in the coal mines for sixteen years, his reputation as a law-abiding citizen was said by several citizens of the county to be good. The crime with which he is charged is the most heinous known to the law. The penalty prescribed for its commission may be death. The responsibility resting upon counsel for the accused is great. Unless the story of the prosecutrix can be shaken, a conviction must follow.

During the progress of the cross-examination the Commonwealth was represented by two of the most experienced attorneys in the western section of the State. No objection was made by them as to the mode of cross-examination, and no exception taken to the questions propounded. It was the trial judge who felt impelled to intervene. By his action he assumed the responsibility of breaking the continuity of the cross-examination, by telling counsel he was "unfair" and that "the court will interpose a protection for her."

The record fails to disclose that the prosecutrix was the least perturbed by the cross-examination of counsel or needed the protection of the court. While a trial court should never permit a witness to be bulldozed or browbeaten by counsel, it should never overlook the fact that cross-examination, in an effort to elicit the truth, is the acid test to be applied to a recalcitrant witness. It is conceivable that the action of the trial court could or may have influenced the jury.

In our opinion the assignment of error is well taken.

What was said by Judge Burks in *Mazer* v. *Common-wealth*, 142 Va. 649, 653, 128 S. E. 514, applies to the case at bar:

"The high official position of the trial judge in a criminal case gives great weight, with the jury, to his. words and conduct, and it is incumbent upon him to guard against any manifestation of his opinion either upon the weight of the evidence or the credibility of the witnesses. 'All expressions of opinions, or comments, or remarks, upon the evidence, which have a tendency to intimate the bias of the court with respect to the character or weight of the testimony, particularly in criminal cases, are watched with extreme jealousy and generally considered as invasions of the province of the jury.' *Dejarnette* v. *Commonwealth*, 75 Va. 867, 874."

It is not necessary to prolong this opinion by discussing the remaining assignments of error. They are either without merit or raise questions not likely to arise on a new trial.

The judgment of the trial court must be reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Reversed and remanded.*