## Richmond

MADELINE JOHNSON v. COMMONWEALTH OF VIRGINIA.

March 10, 1952.

Record No. 3927.

Present, All the Justices.

The opinion states the case.

*David Nelson Sutton,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General* and *G. Stanley Clarke, Assistant Attorney General,* for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

Madeline Johnson was convicted of selling to Joe Roy a half pint of whiskey on August 13, 1950. The punishment imposed was thirty days confinement in jail and a fine of $250.

Defendant's only contention is that the trial court committed reversible error in overruling her motion to declare a mistrial, because the court, in the presence of the jury, made statements prejudicial to her.

Joe Roy testified that between 2:00 and 4:00 a. m. on August 13, 1950, he went to defendant's home in Middlesex county, and there bought from her a half pint of whiskey. Other witnesses for the Commonwealth testified that Joe Roy was sober when he went to defendant's home and that the whiskey he purchased from defendant and drank on her premises made him drunk. Several witnesses for defendant testified that Joe Roy was drunk before he went to her home.

Defendant's main defense was that she was not at home on the night of August 12th; that she spent the entire night in Richmond, and hence could not have made the sale at the time and place alleged.

The first witness she introduced to establish this alibi was C. A. Smith, who testified that he was a preacher and also superintendent of orderlies at the City Home, in Richmond, Virginia. At approximately 7:00 p. m. on August 12, defendant came to his home in Richmond and ate supper with him and another party at Market Inn. At this point, the court interrupted the examination of the witness, and said: "I'm not going to allow this evidence that Madeline Johnson was in Richmond, it has nothing to do with this case."

Counsel for defendant objected to the statements made by the court, on the ground that the testimony was "most pertinent to prove that Madeline Johnson was not in Middlesex County at the time of the alleged offense." The court, in reply, said: "I did not think you would take this view and try to prove that she was not in Middlesex County."

Counsel again objected to the statements of the court and moved for a mistrial, on the ground that they were highly prejudicial. The motion was overruled and the court, without explaining its remarks, or instructing the jury to disregard them, reversed its former ruling and admitted the testimony.

On further examination, Smith testified that defendant accepted an invitation to spend the night at his home, and at

approximately 11:00 p. m. he went to work and left her there; that the next morning he returned home from his work at approximately 7:00 a. m. and found the following note from defendant on his dresser:

"8/13/50

"Rev. Smith I am sorry I can not stay until you get home it is Six O'clock now and my tires are bad and I have to make a report at my church at 11 O'clock.

"Thanks for everything—I will meet you the 4 Sunday at * * * Amburg, Va.

Madeline Johnson"

W. A. Young and Stewart Baylor testified that on Sunday morning, August 13th, they saw defendant in Richmond, Virginia. The latter witness said he sold her gasoline and gave her $1 for her church. Rufus R. Nettles testified that on the morning of August 13, he went by the home of Madeline Johnson in Middlesex to get a sheet of music. He arrived there at approximately 9:00 a. m. and Madeline did not return until after 10:00 a. m.

The testimony for the Commonwealth and for the accused was in sharp conflict. It was sufficient to support a verdict for the Commonwealth or for the accused. Under these circumstances, the unwarranted statements of the court may have influenced the jury in weighing the conflicting testimony.

The Commonwealth contends that, as neither the attorney for the Commonwealth nor the attorney for defendant made an opening statement before introducing evidence, the trial court did not know the nature of the defense, and hence was excusable in making the statements to the effect that defendant's presence in Richmond had nothing to do with her guilt or innocence.

When the court was informed by the attorney for defendant of the purpose for which the testimony was offered, it had an opportunity to remove, in part at least, the effect of its remarks from the minds of the jurors by an appropriate instruction. It did not follow this course, but aggravated the prejudicial effect of its former statement by saying "I did not think you would take this view and try to prove that she was not in Middlesex."

Mr. Justice Spratley, in *Holober* v. *Commonwealth*, 191 Va. 826, 841, 62 S. E. (2d) 816, aptly said: "The function of a trial judge is to see that the parties have a fair and impartial trial in cases heard before him in keeping with our high traditions

of justice. He should see that opportunity is given to develop all pertinent facts. When that has been done, he must be content. This does not prevent him from asking impartial questions of a witness which might shed light on pertinent matters; but the questions should not disclose bias on his part or imply discredit of the integrity or veracity of the witness."

The statement made before the objection was interposed and the statement made after the court was informed of the nature of the defense, considered together, were highly prejudicial. They were made in such manner that the jury had reasonable grounds to believe that the court did not think the testimony worthy of credence. While the court, in effect, did reverse itself in that it admitted all the testimony tending to prove an alibi, it did nothing to remove from the minds of the jurors the prejudicial effect of its unjustifiable comments.

We have repeatedly held that in the trial of a criminal case it is of great importance that the court leave to the jury, exclusively, the consideration of the facts. In *Parsons* v. *Commonwealth*, 154 Va. 832, 152 S. E. 547, it was said: "Trial judges in Virginia do not sit merely to keep order. They must do whatever seems to be necessary to mete out evenhanded justice both to the Commonwealth and to the accused, and they should with care abstain from conduct which tends to indicate to the jury any opinion upon those facts, which it is their, and not his, duty to pass upon."

We said in *Anthony* v. *Commonwealth*, 179 Va. 303, 18 S. E. (2d) 897, that " * * * The non-judicial statement of the court, made in the presence of the veniremen who later qualified as jurors, was prejudicial to the accused. These jurors might well have inferred that the presiding judge did not think the testimony material, or, if material, that it was not entitled to credence. These jurors might have inferred also that the presiding judge was of opinion that the accused was guilty * * *."

To the same effect, see: *Willis* v. *Commonwealth*, 183 Va. 125, 31 S. E. (2d) 306; *Jones* v. *LaCrosse*, 180 Va. 406, 23 S. E. (2d) 142; *Hicks* v. *Commonwealth*, 178 Va. 261, 16 S. E. (2d) 639; *Pinn* v. *Commonwealth*, 166 Va. 727, 186 S. E. 169; *Mazer* v. *Commonwealth*, 142 Va. 649, 128 S. E. 514.

The judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*