## Richmond

## TYRONE WENDELL GOODE V. COMMONWEALTH OF VIRGINIA.

April 22, 1977.

Record No. 760506.

Present, All the Justices.

*Thomas F. Coates, III (Coates and Comess*, on brief), for plaintiff in error.

*K. Marshall Cook, Assistant Attorney General (Andrew P. Miller, Attorney General; Wilburn C. Dibling, Jr., Assistant Attorney General*, on brief), for defendant in error.

Per Curiam.

A jury found Tyrone Wendell Goode guilty of robbery in violation of Va. Code § 18.2-58 (Repl. Vol. 1975) and fixed his punishment at confinement in the State penitentiary for ten years. On appeal from the judgment order entered on the jury verdict the sole question is whether Goode was denied a fair and impartial trial because of certain actions of the trial judge.

About 8:40 p.m. on October 14, 1975, Mrs. Marilyn Wright and Miss Martha Joyce, public school teachers, left a meeting at their school. While waiting for Miss Joyce to unlock the car, Mrs.

Wright was robbed by the taller of two young black males who accosted her. The next day Mrs. Wright identified Goode as the robber from a photographic display. He was arrested and charged with the offense, and Mrs. Wright subsequently identified him again in court. She testified that the other man "was much shorter, and he stayed off to the side". Miss Joyce could identify neither of the robbers.

Goode, a juvenile 15 years of age on the date of the robbery, presented an alibi defense. He, his father, a sister, and the sister's boyfriend, Preston C. Cooper, Jr., testified that Goode had been at home playing a card game called "Spades" continuously from 5:30 p.m. or 6:30 p.m. on the night of the robbery until approximately midnight. The witnesses testified that a friend of Goode's, described by Goode's father as a "little fellow that lived across the street", participated in the game during the early part of the evening but left at a time estimated by one witness at approximately 9:00 p.m., and by Goode and others at approximately 7:30 p.m.

The trial judge asked Goode's father the name of the "little fellow" who came in with Goode; he asked another witness to describe the friend; and he asked Goode's counsel to elicit evidence as to the friend's identity. When Goode testified that the friend was Jeff Berry, the trial judge questioned him about Berry's size, had the witness demonstrate for the jury how Berry's height compared with his, and directed a bailiff to measure with a ruler along Goode's body Berry's indicated height. Goode's counsel objected that the judge's questions were "clearly directed here towards tying the defendant . . . with the second party in the alleged robbery . . . ." The judge replied that there was testimony by Goode's father that Goode came in "with some little guy" and testimony by the victim "that there was with him . . . a smaller person", but that since the jury had seen the height of Berry as indicated by Goode, he would not insist on having the height measured by a ruler.

After all evidence had been presented, Goode's counsel made the uncontradicted representation to the court, out of the presence of the jury, that he had been informed by the investigating police officer during the recess for lunch that Mrs. Wright apparently knew Jeff Berry and during the investigation had cleared him of any involvement in the crime. He moved that the jury be so advised "in order to clear up any possible

prejudicial inference . . . ." The court overruled the motion on the ground that there was nothing to show that Berry could not have been called as a defense witness to establish "the first part of the alibi, and secondly to exculpate himself". A motion for a mistrial was then made by Goode's counsel, and this also was overruled by the trial court. Subsequently, a motion to set aside the verdict and a motion for a mistrial on the same ground previously asserted were overruled.

Goode contends that these actions of the trial judge prejudiced him and constituted reversible error. We agree. A trial judge has a right and, indeed, at times a duty to question a witness provided he does not disclose bias in so doing. *Skipper* v. *Commonwealth*, 195 Va. 870, 879, 80 S.E.2d 401, 406 (1954); *Mazer* v. *Commonwealth*, 142 Va. 649, 655, 128 S.E. 514, 516 (1925). But, mindful that the high official position of a trial judge in a criminal case gives great weight with the jury to his words and conduct, we have repeatedly said that a trial judge, in order to avoid invading the province of the jury and thereby prejudicing an accused, should refrain from indicating in any way his views upon the weight or quality of the evidence. *Spear* v. *Commonwealth*, 213 Va. 599, 601, 194 S.E.2d 751, 753 (1973); *Willis* v. *Commonwealth*, 183 Va. 125, 131-32, 31 S.E.2d 306, 308 (1944); *Skipper* v. *Commonwealth, supra; Mazer* v. *Commonwealth, supra*, 142 Va. at 653-54, 128 S.E. at 515. In *Spear*, the trial judge cautioned the jury to disregard improper remarks made by him during trial, but we reversed the conviction because we concluded that the prejudicial effect of the remarks could not have been eliminated by the admonition.

In the present case, it appears that the trial judge undertook to determine whether Berry was with Goode when Mrs. Wright was robbed by a young man whom she identified as Goode. We believe that the jury might reasonably have inferred, from his questions and comments, that the judge believed that Goode was the robber and that Berry was the unidentified black male who accompanied him. But when informed that Berry had been absolved of any involvement in the crime the judge declined to so advise the jury. This error of omission left the earlier indicia of the suspicions of the judge intact before the jury for whatever reasonable inferences might be drawn therefrom. It may be, as the Attorney General argues, that the jury was not adversely

influenced by the judge, but we cannot say that the error was harmless as a matter of law. There was a duty on the part of the judge to take appropriate action to remove the reasonable likelihood that an improper inference might be drawn from remarks which he made without knowledge of Berry's status. His failure to do so requires reversal of the conviction and remand of the case for a new trial.

*Reversed and remanded.*