COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


TIMOTHY LEON JONES

                                      MEMORANDUM OPINION* BY
v.    Record No. 0367-01-2          JUDGE SAM W. COLEMAN III
                                           JUNE 25, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

          John A. Rockecharlie (Bowen, Bryant,
          Champlin & Carr, on brief), for appellant.

          John H. McLees, Jr., Senior Assistant
          Attorney General (Randolph A. Beales,
          Attorney General, on brief), for appellee.


     Timothy Leon Jones, appellant, appeals his convictions of

second-degree murder, in violation of Code § 18.2-32, robbery,

in violation of Code § 18.2-58, and two counts of use of a

firearm in the commission of felonies, in violation of Code

§ 18.2-53.1. Appellant raises three issues on appeal:  (1)

whether the trial court abused its discretion by commenting to

the jury on the strength of the Commonwealth's evidence; (2)

whether the trial court abused its discretion by allowing the

Commonwealth to present evidence of other crimes; and (3)

whether the Commonwealth proved appellant's guilt beyond a

reasonable doubt.

_____

     * Pursuant to Code § 17.1-413, this opinion is not

We find that the trial court improperly commented to the jury on the quality and sufficiency of the Commonwealth's evidence to prove a robbery. Accordingly, we reverse the convictions of robbery and use of a firearm in the commission of robbery and remand those matters to the circuit court for retrial if the Commonwealth be so advised. We further find that the trial court did not err by allowing the introduction of evidence of other crimes committed by Jones. Furthermore, we find the evidence sufficient to support Jones' convictions for second-degree murder and use of a firearm in the commission of murder, and we affirm those convictions.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). The trier of fact is not

designated for publication.

required to accept a party's evidence in its entirety, Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986), but is free to believe and disbelieve in part or in whole the testimony of any witness, Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991).

In this light, the evidence showed that on May 13, 2000, Keith Harris loaned appellant a .22 caliber handgun. Later Harris saw appellant point the weapon at a man named "Pops," who had approached appellant to buy drugs, and demand money from "Pops." "Pops" gave appellant his money and walked off without having purchased drugs. Harris also testified he was selling drugs that day and at approximately 4:30 a.m., on May 14, Annabelle Tafolla approached him to buy crack cocaine. Because Harris only had imitation crack cocaine, he directed her to appellant. Harris heard appellant tell Tafolla to "give [him] the fucking money" while appellant pointed the same gun at her. When Tafolla did not immediately comply, appellant shot at her. Tafolla began to run but then she stopped and turned and gave appellant her money. She collapsed in the street a short distance away, where she died from multiple gunshot wounds from a .22 caliber handgun.

As to the other crimes evidence, James Yellardy testified that on the evening of May 13, appellant came to his home, and asked for money. Yellardy replied he did not have any money. Appellant left, but returned later that night and pointed a gun at him and demanded money. Yellardy still claimed not to have any money, and appellant's girlfriend, Adeline Coleman, convinced appellant to leave without further incident.

Coleman testified and corroborated Yellardy's account of the incident involving Yellardy.  She also recounted that thereafter she and appellant went to her home and smoked crack cocaine and drank beer.  Appellant wanted more crack cocaine and told Coleman he was going to look for some, although he only had seven dollars.  A few minutes after appellant left, Coleman followed him.  She saw appellant, Harris and Tafolla together. It appeared that appellant and Tafolla were arguing and that Tafolla would not give appellant money.  Coleman then saw appellant hit Tafolla and Tafolla fell to the ground.  Although she heard gunshots, she did not see who had or was firing the gun.

Coleman ran back to her home.  Shortly thereafter, appellant arrived at Coleman's home and asked her to get him out of the neighborhood. Coleman arranged for her daughter Yolanda to give them a ride.  Yolanda drove them to another neighborhood in Richmond.  On the way there appellant told Coleman's other daughter when she returned home to look under Coleman's bed for something hidden there.  When the daughter returned home she found between the mattresses a handgun, which later was determined to be the murder weapon.

At trial, appellant testified that it was Harris who had the weapon and shot Tafolla.  Appellant claimed Harris came to Coleman's house and hid the gun.  Appellant testified the witnesses, including himself, were afraid of Harris, which explained why the Commonwealth's witnesses had testified untruthfully at trial and why appellant had lied to his attorney in claiming an alibi.

During jury deliberations, the jury inquired whether appellant could be convicted of robbery when the jurors did not recall any evidence of appellant taking any money from Tafolla. The trial judge responded there was "ample evidence as to that point, if you believe it.  If you don't believe it then there is no evidence heard.  But, if you believe it then there is ample evidence."  Soon thereafter the jury returned with guilty verdicts on all counts, including the charges of robbery and use of a firearm in the commission of robbery.  The robbery verdict form reflected at some point the jury had filled out the "not guilty" verdict but had changed it to a "guilty" verdict.

## ANALYSIS

### Judge's Comments

"[I]n the trial of a criminal case it is of great importance that the court leave to the jury, exclusively, the consideration of the facts."  Johnson v. Commonwealth, 193 Va. 502, 505, 69 S.E.2d 340, 341 (1952).

> The high official position of the trial judge in a criminal case gives great weight, with the jury, to his words and conduct, and it is incumbent upon him to guard against any manifestation of his opinion either upon the weight of the evidence or the credibility of the witnesses.  "All expressions of opinions, or comments, or remarks, upon the evidence, which have a tendency to intimate the bias of the court with respect to the character or weight of the testimony, particularly in criminal cases, are watched with extreme jealousy and generally considered as invasions of the province of the jury."  He should preside with impartiality and "not express or

          intimate an opinion as to the credibility of
          a witness or as to controverted facts."

Mazer v. Commonwealth, 142 Va. 649, 653-54, 128 S.E. 514, 515

(1925) (citations omitted).

          "It is well, too, to remember that in
          Virginia, it is the duty of the trial judge
          to interpret and to apply the law; but it is
          the peculiar duty of the jury to evaluate
          the evidence.  A judge must not express or
          indicate by word or deed, an opinion as to
          the credibility of a witness or as to the
          weight or quality of the evidence.  Any
          question or act of the judge which may have
          a tendency to indicate his thought or belief
          with respect to the character of the
          evidence is improper, and should be
          avoided."

Holober v. Commonwealth, 191 Va. 826, 840, 62 S.E.2d 816, 822

(1951) (citation omitted).

     The foreperson indicated the jury did not recall any

evidence of a taking by appellant of currency or anything else

from Annabelle Tafolla.  In response, the trial judge reiterated

the jury's right and duty to assess the credibility of the

witnesses by telling them that they were entitled to determine

what evidence to believe or disbelieve.  The trial judge did not

instruct the jury that they were to rely on their recollection

of the evidence.  The trial judge did not provide them an

opportunity to review the evidence or the record.  Instead, the

judge stated unequivocally that "ample" evidence of a taking

existed, if they chose to believe it.  The judge's response told

the jury what the judge's assessment was of the quality and

weight of proof as to an essential element of the robbery and firearm charge at the time the jury was deliberating on the charges. By so doing, the judge invaded the province of the jury.

We cannot say that the judge's comments to the jury that "ample" evidence existed to prove an essential element of two of the charged offenses was harmless error. Moreover, on the record, it appears that the judge's comments directly affected the jury's deliberation and may have caused them to change their verdict.

The jury's verdict form of "not guilty," at some point in time, had been signed by the foreman, but when returned to the court the "guilty" verdict form was signed. It appears, therefore, the judge's comments in response to the jury's question influenced the jury's deliberations and deprived appellant of a fair trial on the robbery and firearm issue. Such error is not harmless. Accordingly, we reverse and remand the judgments of conviction for robbery and use of a firearm in the commission of robbery.

## Other Crimes Evidence

"As a rule, evidence of other criminal conduct is inadmissible . . . . However, evidence of other criminal conduct is admissible if it tends to prove any relevant element of an offense charged. The exceptions allow the evidence to be considered when it tends to prove method, intent, identity, or

criminal agency."  Burley v. Commonwealth, 29 Va. App. 140, 144, 510 S.E.2d 265, 267 (1999) (citations omitted).  Further, evidence of other crimes may be admissible to connect a defendant to a murder weapon.  Id. at 145, 510 S.E.2d at 146; see also Woodfin v. Commonwealth, 236 Va. 89, 372 S.E.2d 377 (1988); Tuggle v. Commonwealth, 228 Va. 493, 323 S.E.2d 539 (1984).  Evidence of other criminal acts is also admissible "where the evidence is connected with or leads up to the offense for which the accused is on trial . . . [and] where the other crimes constitute a part of the general scheme of which the crime charged is a part."  Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).

Appellant initially filed notice that he intended to present evidence of an alibi.  At trial, appellant abandoned his alibi defense and claimed he was present at Tafolla's murder, but it was Harris who had the gun and shot Tafolla.  The Commonwealth was charged with the duty to prove the essential element that appellant was the criminal agent who committed the murder and used a firearm to commit the murder.

The Commonwealth's evidence showed that, hours before the murder, appellant attempted to rob James Yellardy and did rob "Pops" of money, at gunpoint with Harris' gun.  The evidence of these other offenses committed by appellant within hours of the charged offense are relevant in several respects.  First, the evidence of the repeated robberies committed by appellant within

hours of the charged murder proved appellant's general scheme or plan to rob people at gunpoint of their money to enable appellant to buy drugs. The evidence tends to prove both motive and identity which are admissible to show that the appellant rather than some other person committed the offenses. The other crimes evidence was highly probative to prove that appellant rather than Harris committed the crimes and to establish how and when appellant came into possession of Harris' handgun. The witnesses identified the murder weapon as the same gun used in the other robberies committed by the appellant hours before the murder. Thus, the other crimes evidence also was relevant to place the murder weapon in appellant's hands, despite his denial that he killed Tafolla. In summary, the evidence was relevant and admissible to prove motive, criminal agency, appellant's general scheme or plan of which the robbery and murder of Tafolla were a part, and to prove that appellant possessed the murder weapon shortly before he killed Tafolla. The probative value of the evidence outweighed any prejudice to appellant. Therefore, the trial court did not err by allowing the introduction of evidence concerning other crimes.

## Sufficiency of the Evidence

Appellant asserts the evidence was not sufficient to support the murder and use of a firearm in the commission of murder convictions because the testimony of the Commonwealth's witnesses was incredible. "The conclusions of the fact finder on

issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the] [witnesses'] . . . testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'" Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (en banc) (citation omitted). The testimony of the Commonwealth's witnesses was not inherently incredible, nor was their testimony contrary to human experience. Basically, all of the witnesses testified that appellant was attempting to obtain money from various people during a one-day period in order to buy drugs by threatening them with a .22 caliber handgun that he borrowed from Harris. On the occasion that he threatened Tafolla, whom he knew had money because she was there to purchase drugs, appellant shot her when she refused to part with her money. In particular, Harris testified he saw appellant point Harris' gun at Tafolla and demand her money. Harris testified that Tafolla gave appellant her money after he began shooting her. Tafolla subsequently died from the gunshot wounds. The evidence was sufficient to support the convictions of second-degree murder and use of a firearm in the commission of murder and was not inherently incredible or contrary to human experience. Although we are reversing and remanding the robbery and use of a firearm in the commission of robbery convictions, we address appellant's appeal of the sufficiency of the evidence as to those charges. For reasons similar to the above discussion, we hold that the proof of the offenses was supported by testimony that is sufficient, if believed by the jury, to prove the offenses beyond a reasonable doubt.

Accordingly, we affirm the convictions for second-degree murder and use of a firearm in the commission of murder.  We reverse the convictions for robbery and use of a firearm in the commission of robbery and remand for a new trial if the Commonwealth be so advised.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

Benton, J., concurring, in part, and dissenting, in part.

I join in the parts of the opinion styled Background and Judge's Comment and, therefore, I concur in reversing the convictions for robbery and use of a firearm in commission of the robbery. I do not join in the part of the opinion styled Other Crimes Evidence. The sole disputed issue at trial was whether Leon Jones or Keith Harris robbed and killed Annabelle Tafolla after she sought to purchase cocaine from Harris. Based upon Harris' testimony, the Commonwealth contended Jones was the perpetrator of the robbery and murder. Jones testified, however, that Harris was the perpetrator. For the reasons that follow, I would reverse the murder conviction and remand it also for a new trial.

In the Commonwealth's case-in-chief, Harris testified he sold illegal drugs, had been convicted of ten felonies, and often carried guns. Harris also testified that on May 13, 2000, the day before the charged murder and robbery, he owned and possessed the .22 caliber handgun, which was used to murder Tafolla. When asked if he knew Jones, Harris testified that he had "seen [Jones] before" and had sold drugs to Jones. Harris also testified that, on May 13 he gave his .22 caliber handgun to Jones. He did not testify that he sold the gun to Jones and did not explain the circumstances in which he gave Jones the gun. He also did not testify that Jones did not return the gun to him on the 13th.

Over defense counsel's objection, Harris was permitted to testify he was with Jones on May 13 when Jones robbed a man using the gun. Over objection, James Yellardy also was permitted to

testify that at another occasion on May 13 Jones entered his house, put a gun to his head, and demanded money. He testified that Jones left without obtaining any money because a friend intervened. Yellardy did not describe the gun Jones used. The friend who intervened testified that the revolver looked like the gun she was shown at trial.

Harris further testified that on May 14 Tafolla approached him and asked him to sell her cocaine. Although he sells cocaine, Harris testified that he only had imitation cocaine and decided not to sell it to her. He admitted he "was planning [to rip her off]," but testified that, instead, he referred her to Jones who was standing next to him. Harris testified that Jones demanded money from Tafolla and then shot her. Harris provided the only testimony that Tafolla was robbed, that Jones was the murderer, and that Jones, not Harris, used Harris' gun to rob and kill Tafolla.

The Commonwealth argued at trial that the evidence of the robbery and attempted robbery on May 13 was offered to establish a modus operandi, which would prove the identity of Jones as the killer. The trial judge agreed and permitted the evidence. On appeal, the Commonwealth argues that "the prior robbery and attempted robbery . . . [were] closely and strongly related to the crimes on trial, and had a strong logical tendency to prove that it was [Jones] who murdered [the woman], and that he did so because he found it necessary in order to rob her." The majority holds that the evidence was admissible to prove identity, a common scheme or plan, and motive. I disagree.

The general rule regarding the use of "other crimes" evidence is well established.

> Evidence that shows or tends to show a defendant has committed a prior crime generally is inadmissible to prove the crime charged. Such evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant.

> \*      \*      \*      \*      \*      \*      \*

> Further, the admission of such "other crimes" evidence is prohibited when its only purpose is to show that the defendant has a propensity to commit crimes or a particular type of crime and, therefore, probably committed the offense for which he is being tried.

Guill v. Commonwealth, 255 Va. 134, 138-39, 495 S.E.2d 489, 491-92 (1998).

Positing merely that the evidence was offered to prove identity is an insufficient basis to satisfy the test of admissibility. "[E]vidence of other crimes . . . is allowed if relevant to show the perpetrator's identity when some aspects of the prior crime are so distinctive or idiosyncratic that the fact finder reasonably could infer that the same person committed both crimes." Id. at 139, 495 S.E.2d at 491. Here, the evidence raises no suggestion of distinctive or idiosyncratic patterns of robbery. Thus, the trial judge erred in admitting the evidence for that reason.

The majority also posits that the evidence establishes a common scheme or plan. No evidence established, however, that the attempted robbery and robbery, which the Commonwealth alleged

occurred the previous day, were linked to a scheme to rob or shoot Tafolla on May 14.  Those other crimes were unconnected to the robbery of Tafolla and were not necessary to prove the circumstances surrounding the robbery and murder.

In addition, this evidence of a prior robbery and attempted robbery had no tendency to prove motive.  The Commonwealth's own evidence proved the motive for the murder was the robbery that was contemporaneous with it.  No evidence tended to prove the robberies the Commonwealth alleges occurred the previous day were the motive for either the robbery or the murder on May 14.

The allegation that the evidence was offered to prove identity, a common scheme or plan, and motive camouflages its real vice.  At its core, this evidence was offered to suggest to the jury that Jones, not Harris, had a propensity to rob and that, therefore, the jury should use that factor in deciding to believe Harris and not Jones.  Indeed, the prosecutor argued to the jury, "one of the most important things for you to judge is who is telling the truth and who is telling a lie in this case."  Specifically, the prosecutor argued:

> [Harris] told you the truth.  He gave the
> gun to [Jones] earlier.  The gun went from
> there to robbing [one man], to robbing
> [another man], to robbing and killing [the
> woman who sought to buy drugs].

The principle is well established that "it is improper to use evidence that a defendant has committed another crime when it has 'no connection with the one under investigation . . . [because those] other acts of criminality . . . are not legally relevant and should not be [used] to prejudice the defendant or to create a probability of guilt.'"  Id. at 140, 495 S.E.2d at

492 (citation omitted).  The evidence proved both men had the gun on May 13.  The prosecutor used the evidence of robberies to argue, however, that proof that Jones committed a robbery and an attempted robbery the previous day was the basis for the jury to conclude that Jones must have killed Tafolla in this instance because the Commonwealth's evidence proved Jones, and not Harris, had a pattern of committing robberies.

The prejudicial effect of presenting this evidence to the jury outweighed any probative value.  The Commonwealth's own evidence proved the motive for the murder was the robbery that was contemporaneous with it.  Harris testified that Jones used Harris' gun to rob and kill Tafolla.  Thus, without the improper evidence of the alleged robbery and attempted robbery, the Commonwealth had evidence from which the jury could have concluded that Jones shot Tafolla in order to obtain money.

Unlike the circumstances in <u>Burley v. Commonwealth</u>, 29 Va. App. 140, 146-47, 510 S.E.2d 265, 268 (1999), the evidence of the other crimes did not "inextricably" link the gun to Jones during the shooting of Tafolla.  The evidence proved two people, Harris and Jones, had the gun the day before the murder.  Harris owned the gun on the previous day and testified that he gave Jones the gun on May 13.  Harris also admitted he was present for the purpose of selling drugs when Tafolla was shot.  Because both Harris and Jones were present when Tafolla was murdered, proof that Jones had possession of the gun on May 13 did nothing more than tend to prove Jones had a propensity to rob.  Evidence of "criminal propensity . . . , is inadmissible because it confuses one offense with another, unfairly surprises the defendant with a

charge he is unprepared to meet, and tends to reverse his presumption of innocence of the crime on trial." Meadows v. Commonwealth, 9 Va. App. 243, 246, 385 S.E.2d 906, 908 (1989).

In addition, proof that suggested by inference that Jones was a person inclined to commit robberies (and that Harris, the Commonwealth's witness, was not) tended to distract the jury and sway the jury toward giving greater credit to Harris' testimony because "of collateral facts or those incapable of affording any reasonable . . . inference on the matter in issue." Boggs v. Commonwealth, 199 Va. 478, 486, 100 S.E.2d 776, 772 (1957). Harris was a drug dealer whom Tafolla initially approached. He owned the murder weapon, "hang[s] out with guns a lot," and has been convicted of ten felonies. Only Harris testified that Tafolla was robbed. This evidence of other robberies was offered to deflect the jury from Harris' patently transparent testimony that he referred the woman to Jones for a drug transaction because Harris, who had in his possession imitation cocaine to sell, was too nice to sell Tafolla imitation cocaine. By allowing this evidence of other crimes, the judge put Jones in the position of defending "other misconduct and other crimes . . . for which he was not then on trial." Id. at 488, 100 S.E.2d at 773. I would hold that this evidence violates the fundamental principle that "the legitimate probative value of [other crimes] evidence must exceed the incidental prejudice caused the defendant." Guill, 255 Va. at 139, 495 S.E.2d at 492.

In short, the evidence proved Tafolla was killed by a bullet from Harris' gun. Only Harris testified that Jones robbed and killed her. Jones testified that Harris robbed and killed her.

The Commonwealth sought to have the jury resolve this credibility dispute and conclude that Jones, not Harris, must have been the killer because Harris testified the woman was robbed by Jones, who the Commonwealth alleged was an accomplished robber. The evidence proved only propensity conduct and was impermissibly offered for that purpose.

For these reasons, I would reverse both convictions and remand for a new trial.