696 S.E.2d 247

Kevin L. HOLLOWAY

v.

COMMONWEALTH of Virginia.

Record No. 0828–08–1.

Court of Appeals of Virginia.

Aug. 10, 2010.

668

S. Jane Chittom, Appellate Defender (Office of the Appellate Defender, on brief), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee.

Present: ELDER, ALSTON, JJ., and CLEMENTS, Senior Judge.

## UPON A REHEARING

ALSTON, Judge.

Kevin L. Holloway ("appellant") was convicted of possession with intent to distribute an imitation controlled substance, in violation of Code § 18.2-248, and assault and battery of a law enforcement officer, in violation of Code § 18.2-57. On appeal, appellant contends the evidence was insufficient to prove he possessed an imitation controlled substance with the intent to distribute. Further, appellant argues the evidence failed to prove he possessed the requisite state of mind to sustain the conviction of assault and battery of a law enforcement officer.

On January 26, 2010, we reversed appellant's conviction for possession with intent to distribute an imitation controlled substance and affirmed appellant's conviction for assault and battery of a law enforcement officer. Thereafter, we granted the Commonwealth's petition for rehearing by the panel, pursuant to Rule 5A:35(A). Upon rehearing, we find the evidence was insufficient to show that appellant intended to distribute the imitation controlled substance, and we reverse

appellant's conviction for possession with intent to distribute. However, for the following reasons, we affirm the trial court's decision regarding the conviction for assault and battery of a law enforcement officer.

## I. BACKGROUND

### A. Possession with Intent to Distribute

On the evening of August 19, 2006, the Portsmouth City Police Department received a report of a man in black clothing carrying a handgun on the porch of a Portsmouth residence. When officers arrived, they observed appellant standing on the porch of the home. Appellant, who wore black clothing, matched the description provided to the officers by the police department dispatcher. One of the responding officers, Officer R. Riddle, also observed another male, who was wearing a white top, five to seven feet in front of the porch. When the officers pulled up to the residence, the male in the white top began walking toward the street. Because of the report that a "man in all black" had a gun, the officers focused their attention on appellant. There was a low wall enclosing the porch, and the officers were unable to see appellant's hands, which were by his sides. The officers ordered appellant to place his hands where they could see them, and step out from behind the porch's wall.[1]

As Officer Riddle approached appellant, he witnessed appellant make a "pitching motion" with his left hand toward the front door of the residence. Officer Riddle was unable to discern what appellant threw. The officers ordered appellant to the ground, and as Officer Riddle advanced toward the house, he observed a plastic bag ("corner baggie") resting on the porch in the area where appellant directed the pitching

---

1. No gun was found or seen by the officers responding to the dispatch, and the Commonwealth does not allege that appellant possessed a gun. The officers focused on appellant, the man who matched the description of the person reported to have a gun, and the record contained no evidence concerning whether the officers had any contact with the man in the white shirt, whom they saw walking away from the porch.

motion. Approximately fifteen to thirty seconds elapsed between the time appellant moved his arm and Officer Riddle's observation of the corner baggie. The corner baggie contained three smaller corner baggies, each holding what appeared to be $20 worth of crack cocaine. Testing later revealed the substance was not actually crack cocaine.

During the officers' interaction with appellant, no one else entered the porch area. The officers did not find any scales, packaging materials, or ingestion devices, either around the porch or on appellant's person. Officer Riddle testified that appellant did not have any money on his person, or if he did, it was "a minimal amount, not worth recovering." Appellant was arrested that evening.

At trial, Detective K. Gavin qualified, without objection, as an expert in the use, packaging, and distribution of narcotics. He testified that possession of three individually wrapped rocks of an imitation controlled substance, without possession of a smoking device, is inconsistent with personal use. He stated, "[T]here is no reason to possess an imitation controlled substance unless [an individual was] either ripped off or . . . possessed it to distribute." Detective Gavin dismissed the possibility that an individual would unknowingly purchase imitation crack cocaine in three individually wrapped baggies apparently worth $20 each, because "[i]t is not cost effective for a user to purchase three twenty-dollar rocks individually, packaged that way, for sixty dollars. They could get a lot more crack if they purchase[d] it in a larger quantity." Detective Gavin opined that a regular cocaine user would know that purchasing three twenty-dollar packages of crack cocaine was not cost effective and that a "new cocaine user . . . wouldn't have been purchasing three rocks at the same time. That's a lot more than a new cocaine user would attempt." However, when asked whether "all cocaine users, everyone who buys crack, shops around for the best deal, like Wal–Mart [sic]," Detective Gavin conceded that he could confirm only "that is what . . . *most* . . . users do." (Emphasis added).

Detective Gavin acknowledged that an individual may not carry a crack pipe or other ingestion device on their person if they bought the crack cocaine for later use; however, he stated that "normal user[s]" "maintain a stem or crack pipe on their person when they purchase crack cocaine."

After the close of the Commonwealth's case, appellant moved to strike the evidence on the ground that the evidence was insufficient to show that appellant possessed the imitation substance with the intent to distribute, because the evidence left open the reasonable hypothesis that appellant had been "ripped off" and possessed the imitation substance for personal use. The trial court denied the motion and convicted appellant of possession of an imitation controlled substance with intent to distribute.

### B. Assault and Battery of a Law Enforcement Officer

Following appellant's arrest, Officer Riddle transported appellant to the magistrate's office. There, appellant became belligerent toward the magistrate, who instructed Officer Riddle to remove appellant from her office. As Officer Riddle escorted appellant down the hallway, appellant stopped walking and "slammed his body back" into the officer's body, causing Officer Riddle "to go off balance." Appellant began to pull away from the officer, who subsequently "slammed [appellant] down on the ground, [and] got on top of him to try to get him under control." During the struggle with the officer, appellant kicked Officer Riddle's right leg, and then attempted to kick Officer Riddle in the head. Officer Riddle avoided being struck in the face by moving his head just before the blow landed.

During his motion to strike at trial, appellant argued that there was insufficient evidence to convict appellant of assault and battery of a police officer because there was no evidence that the kick or attempt to kick were intentional. Rather, appellant argued that he was merely struggling after being forced to the ground. The trial court overruled the motion, and found appellant guilty of assault and battery of a police officer.

Appellant timely noted his appeal to both charges, and this appeal followed.

## II. ANALYSIS

■ On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Pryor v. Commonwealth,* 48 Va.App. 1, 4, 628 S.E.2d 47, 48 (2006) (quoting *Commonwealth v. Hudson,* 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cooper v. Commonwealth,* 54 Va.App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting *Parks v. Commonwealth,* 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis omitted)). "The issue upon appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Maxwell v. Commonwealth,* 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

### A. Possession with Intent to Distribute

■ On appeal, appellant argues that while the evidence may be sufficient to prove possession of the imitation controlled substance, it was insufficient to establish that he possessed the substance with the intent to distribute under Code § 18.2–248(A). Code § 18.2–248(A) states, in pertinent part: "Except as authorized in the Drug Control Act ..., it shall be unlawful for any person to manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance or an imitation controlled substance."

■ In order to prove intent to distribute, the Commonwealth may rely on circumstantial evidence, so long as it excludes every reasonable hypothesis of innocence. *See Em-*

*erson v. Commonwealth,* 43 Va.App. 263, 277, 597 S.E.2d 242, 249 (2004); *Servis v. Commonwealth,* 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). " 'Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.' " *Emerson,* 43 Va.App. at 277, 597 S.E.2d at 249 (quoting *Archer v. Commonwealth,* 26 Va.App. 1, 12–13, 492 S.E.2d 826, 832 (1997)); *see also Haskins v. Commonwealth,* 44 Va.App. 1, 9, 602 S.E.2d 402, 406 (2004) (holding that where the factfinder has rejected the hypothesis of innocence, "that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion").

Virginia courts have considered a number of factors alone and in combination when determining if an intent to distribute exists. "When the proof of intent to distribute . . . rests upon circumstantial evidence, the quantity which the defendant possesse[d] is a circumstance to be considered." *Dukes v. Commonwealth,* 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984). If the quantity of drugs possessed is greater than that ordinarily possessed for personal use, that fact alone may be sufficient to prove intent; however, where the quantity is small, the fact finder may infer the drugs were intended for personal use. *Early v. Commonwealth,* 10 Va.App. 219, 222, 391 S.E.2d 340, 341 (1990) (citing *Dutton v. Commonwealth,* 220 Va. 762, 765, 263 S.E.2d 52, 54 (1980)); *see also Monroe v. Commonwealth,* 4 Va.App. 154, 156, 355 S.E.2d 336, 337 (1987).

In the instant case, Detective Gavin testified that a new user of crack cocaine would not purchase three rocks of cocaine at a time; however, during his discussion of a "normal" user's behavior, Detective Gavin stated if a normal user was buying $60 worth of cocaine, he would buy one "larger slab," rather than three separately packaged rocks. Thus, Detective Gavin's testimony neither establishes that the amount of cocaine was incompatible with appellant's defense that he possessed the imitation cocaine for his personal use, nor does the detective's testimony provide a basis for the

conclusion that the quantity of cocaine was greater than the supply ordinarily possessed by a cocaine user for personal use.[2]

 In addition to the quantity of the controlled substance possessed, the Commonwealth may present other circumstances for the fact finder's consideration, such as the accused's conduct and statements. *Long v. Commonwealth,* 8 Va.App. 194, 198, 379 S.E.2d 473, 476 (1989) (citing *Hargrave v. Commonwealth,* 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)). A trier of fact may also consider how the drugs were packaged. *Monroe,* 4 Va.App. at 156, 355 S.E.2d at 337; *Dukes,* 227 Va. at 122–23, 313 S.E.2d at 383–84. " 'However, even if the substance is packaged for distribution, there must be additional evidence to preclude the inference that it was purchased in the packaged form for personal use[,] rather than being held in that fashion for distribution.' " *Servis,* 6 Va.App. at 524, 371 S.E.2d at 165 (quoting *Monroe,* 4 Va.App. at 156, 355 S.E.2d at 337); *accord Dukes,* 227 Va. at 123, 313 S.E.2d at 384. For example, " 'the presence of a large, or bulk, quantity from which smaller packages may have been made up for distribution' " may preclude the inference that the defendant possessed the illegal substance for personal use. *Id.* (quoting *Monroe,* 4 Va.App. at 156–57, 355 S.E.2d at 337).

---

2. We do not mean to suggest that this quantity of cocaine in every case leads to an inference of possession for personal use.

"[E]xpert testimony, usually that of a police officer," is one factor or circumstance which the fact finder may consider in determining whether drugs were possessed with intent to distribute. *Because the facts and circumstances in each drug-related case vary, no uniform standard exists to differentiate an amount that is always for personal use or for distribution.* While many states have chosen to differentiate between the severity or degree of the offense based upon the amount in one's possession, Virginia recognizes that a drug dealer may not always possess a large amount of illegal contraband. Thus, proof of whether one possesses drugs for personal use or distribution depends on the facts of each case. The creation of an evidentiary presumption based on possession of a specific amount is left to the legislature.

*Askew v. Commonwealth,* 40 Va.App. 104, 110, 578 S.E.2d 58, 61 (2003) (emphasis added) (quoting *Shackleford v. Commonwealth,* 32 Va.App. 307, 327, 528 S.E.2d 123, 133 (2000)).

Likewise, "the presence of paraphernalia [e.g., scales, baggie corners, or razor blades] used in the packaging process" is inconsistent with possession for personal use. *Hambury v. Commonwealth,* 3 Va.App. 435, 438, 350 S.E.2d 524, 525 (1986).

"The presence of an unusual amount of money, suggesting profit from sales, is another circumstance that negates an inference of possession for personal use." *Servis,* 6 Va.App. at 524, 371 S.E.2d at 165 (citing *Colbert v. Commonwealth,* 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978); *Dukes,* 227 Va. at 123, 313 S.E.2d at 384; *Wells v. Commonwealth,* 2 Va.App. 549, 551–52, 347 S.E.2d 139, 140 (1986)). The absence of an ingestion device and the presence of a firearm are also factors that may be considered. *Shackleford v. Commonwealth,* 32 Va.App. 307, 327–28, 528 S.E.2d 123, 133 (2000) (citing *Langston v. Commonwealth,* 28 Va.App. 276, 286, 504 S.E.2d 380, 385 (1998)). Finally, the fact finder may consider the testimony of expert witnesses to determine if possession of an imitation or controlled substance is for personal use or distribution. *Id.* at 327, 528 S.E.2d at 133 (citing *Rodriguez v. Commonwealth,* 18 Va.App. 277, 443 S.E.2d 419 (1994) (*en banc* ), *aff'd,* 249 Va. 203, 454 S.E.2d 725 (1995); *Poindexter v. Commonwealth,* 16 Va.App. 730, 432 S.E.2d 527 (1993)).

The Commonwealth need not present evidence of each of the above factors; however, the totality of the circumstantial evidence must exclude the reasonable hypothesis of possession for personal use. *Compare Dukes,* 227 Va. at 122–23, 313 S.E.2d at 383–84 (possession of one-half ounce of marijuana packaged in three small envelopes, absent drug paraphernalia or an unusual amount of money, is insufficient evidence to convict an individual of possession with intent to distribute), *with Askew v. Commonwealth,* 40 Va.App. 104, 111, 578 S.E.2d 58, 62 (2003) (possession of $700 worth of crack cocaine, a pager, and $65 in small bills, coupled with the absence of a personal ingestion device, is inconsistent with personal use), *and White v. Commonwealth,* 25 Va.App. 662, 668, 492 S.E.2d 451, 454 (1997) (*en banc* ) (possession of a relatively

small amount of cocaine, together with possession of a pager, an electronic scale, and $581 in small denominations, supports a trial court's finding that defendant possessed the cocaine with intent to distribute).

We hold that under the facts and circumstances of this case, the evidence is insufficient as a matter of law to convict appellant of possession of an imitation substance with the intent to distribute. We reach this conclusion despite the expert opinion presented at trial that the circumstances presented suggest possession with intent to distribute. That expert testimony was only "one factor or circumstance" that the trial court "consider[ed] in determining whether [the] drugs were possessed with intent to distribute," *Askew,* 40 Va.App. at 110, 578 S.E.2d at 61; it is not dispositive in our analysis, *see id.* at 109, 578 S.E.2d at 61. Detective Gavin testified that the following circumstances were inconsistent with personal use: the method of packaging the substance; the absence of an ingestion device; and the fact that the "crack cocaine" was imitation crack cocaine, rather than the authentic drug.

Based on the detective's trial testimony, the Commonwealth suggests that because the substance possessed was an imitation that could not be used for personal purposes, *a fortiori,* it must have been possessed by the appellant for distribution. We disagree. There was nothing in the record to suggest that appellant knew that the substance he possessed, which he could have just purchased from the man in the white shirt seen walking away from the porch, was not cocaine, and furthermore, the detective recognized that a person could possess an imitation controlled substance under two circumstances: "they were *either* ripped off *or* possessed it to distribute." (Emphasis added).

The Commonwealth asserts that because the "drugs" were packaged in separate baggies, the trier of fact rightfully concluded that the imitation substance was possessed for distribution. Detective Gavin testified that the possession of three baggies of imitation crack without possession of a smok-

ing device was inconsistent with personal use because an individual could get more for his money if he bought one larger rock of cocaine, rather than three smaller rocks; however, this determination presupposes that a seller of drugs always sells each bag at market value and that the seller always has a larger rock of cocaine available for purchase. No evidence in the record established that the three baggies of imitation cocaine had been exchanged for $60, and the evidence did not exclude the reasonable hypothesis that appellant purchased it at a quantity discount despite the method of packaging. When asked whether "all cocaine users, everyone who buys crack, shops around for the best deal, like Wal–Mart [sic]," Detective Gavin conceded he could confirm only that buying cocaine in bulk "is what ... *most* ... users do." (Emphasis added). Furthermore, our jurisprudence instructs us, " '[E]ven if the substance is packaged for distribution, there must be additional evidence to preclude the inference that it was purchased in the packaged form for personal use[,] rather than being held in that fashion for distribution.' " *Servis*, 6 Va.App. at 524, 371 S.E.2d at 165 (quoting *Monroe*, 4 Va.App. at 156, 355 S.E.2d at 337); *accord Dukes*, 227 Va. at 123, 313 S.E.2d at 384.

Based on this precedent and the record before us, we conclude that Detective Gavin's opinion that a normal crack user would not buy $60 worth of cocaine in three baggies does not negate the reasonable hypothesis that appellant possessed the imitation cocaine for personal use. The officers did not recover a bulk quantity of controlled substance that could be subdivided into smaller packages, nor did they find paraphernalia associated with the packaging of drugs, i.e., scales and razors. Furthermore, the record contains no affirmative evidence that appellant possessed a firearm or unusual or large sums of money. Additionally, we do not find the lack of an ingestion device *alone* to be sufficient evidence to overcome the presumption of possession for personal use. *See Dukes*, 227 Va. at 123, 313 S.E.2d at 384 (recognizing that the absence of drug paraphernalia makes it "more likely that [the defendant] used the drug elsewhere"). Finally, appellant's con-

duct—it is undisputed that appellant tossed the substance away when Officer Riddle approached him—provides further support for the reasonable hypothesis that appellant was a user of cocaine who did not know the substance was not actually cocaine. Therefore, the evidence does not exclude the reasonable hypothesis that appellant had purchased the imitation cocaine from the man in the white shirt on the porch *outside* the house and that appellant had a smoking device *inside* the residence.

While "[i]t is axiomatic that 'the Commonwealth need only exclude reasonable hypotheses that flow from the evidence, not those that spring from the imagination of the defendant,'" *Hamilton v. Commonwealth*, 16 Va.App. 751, 755, 433 S.E.2d 27, 29 (1993), it is equally axiomatic that a theory of criminal liability professed by the Commonwealth cannot be imaginative, hypothetical or mere conjecture, *see Dunn v. Commonwealth*, 222 Va. 704, 705–06, 284 S.E.2d 792, 793 (1981) (holding that a verdict "based only upon speculation and conjecture ... cannot be permitted to stand"). With no direct evidence supporting any theory of possession for distribution of imitation narcotics, the Commonwealth invites us to reach the conclusion that if an individual possesses a quantity of imitation narcotics, and there is no evidence to suggest immediate personal ingestion of the substances, the imitation narcotics therefore *must be* possessed for distribution. We disagree and conclude that the result is dictated by the specific facts of the case rather than a factually unsupported *theory* of culpability professed by the Commonwealth.[3]

Accordingly, we hold the evidence in this case does not exclude the reasonable hypothesis that appellant possessed the substance for personal use.

---

3. The dissent accuses the majority of playing a game of "what ifs." Rather than playing a game of "what ifs," the result we reach rejects *possibilities* of blameworthiness as required by the tenets of reasonable doubt.

682

B. Assault and Battery of a Law Enforcement Officer

 Code § 18.2–57(C) prohibits a person from committing an assault and battery knowing or having reason to know that the victim is a law enforcement officer.

> An assault is an attempt with force and violence, to do some bodily hurt to another, whether from wantonness or malice, by means calculated to produce the end if carried into execution; it is any act accompanied with circumstances denoting an intention, coupled with a present ability, to use actual violence against another person. Battery is the actual infliction of corporal hurt on another that is done willfully or in anger.

*Montague v. Commonwealth*, 278 Va. 532, 541, 684 S.E.2d 583, 589 (2009) (citations omitted) (internal quotation marks omitted). Appellant concedes that the required mental state may be inferred from the commission of a reckless act. *Davis v. Commonwealth*, 150 Va. 611, 619, 143 S.E. 641, 643 (1928) ("an intention to injure ... may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional"). Furthermore, appellant's " 'intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [fact finder].' " *Hughes v. Commonwealth*, 18 Va.App. 510, 519, 446 S.E.2d 451, 457 (1994) (*en banc*) (quoting *Ingram v. Commonwealth*, 192 Va. 794, 801–02, 66 S.E.2d 846, 849 (1951)).

Appellant does not contend that he did not know Officer Riddle was a law enforcement officer. Instead, he argues that the Commonwealth failed to prove that he possessed the requisite state of mind to convict him of the crime. Appellant contends Officer Riddle's testimony merely amounts to an allegation that appellant came to a sudden stop, causing the officer to collide with appellant. Appellant argues that this action was not intentional, reckless, or harmful to the officer. Appellant then asserts that his subsequent kicks to the offi-

cer's leg and head were unintentional, and merely movements in appellant's struggle to get Officer Riddle off him. Appellant contends that the contact between the officer and appellant was unintentional on appellant's part; thus, the required mental state has not been proven.

We disagree with appellant and find that the Commonwealth provided sufficient evidence as to the element of intent. The evidence showed that appellant behaved belligerently in the presence of the magistrate moments before his physical confrontation with the police officers and that the contact between appellant and Officer Riddle occurred as Officer Riddle was attempting to escort appellant from the magistrate's office. Officer Riddle testified that appellant came to a sudden stop and "slammed" his body back into the officer. Appellant then kicked Officer Riddle's leg and attempted to kick Officer Riddle in the head. Based on this evidence, the trial court's determination that appellant committed assault and battery on Officer Riddle was not plainly wrong or without evidence to support it.

### III. CONCLUSION

We conclude that based on the facts of this case, the evidence is insufficient as a matter of law to convict appellant of possession of an imitation controlled substance with the intent to distribute in violation of Code § 18.2–248, as the evidence does not preclude the reasonable hypothesis of possession for personal use. We also hold that the evidence was sufficient to find appellant committed assault and battery on an individual he knew was a law enforcement officer, in violation of Code § 18.2–57(C). Accordingly, the judgment of the trial court is reversed and dismissed in part,[4] and affirmed in part.

*Affirmed in part, and reversed and dismissed in part.*

---

4. While it is illegal to possess an imitation controlled substance with the intent to distribute, the General Assembly has not criminalized the mere possession of an imitation controlled substance. Consequently, this case is not remanded for a new trial for simple possession, *see Britt v.*

CLEMENTS, J., concurring, in part, and dissenting, in part.

I continue to agree with that part of the majority opinion that affirms appellant's conviction for assault and battery of a law enforcement officer. Therefore, I join Part IIB of the majority opinion.

Upon consideration of the petition for rehearing and appellant's brief in response thereto, however, I conclude that this Court is duty-bound to also affirm appellant's conviction for possession of an imitation controlled substance with the intent to distribute it. Therefore, I dissent from Part IIA of the majority opinion.

My quarrel with the majority opinion hinges on a fundamental disagreement over the interpretation of and application of the appropriate standard of review. The majority emphasizes the tenet that the evidence must exclude every reasonable hypothesis of innocence and concludes the evidence in this case leaves open such a hypothesis. I believe the majority, in doing so, fails to view the evidence in the light most favorable to the Commonwealth and to defer, as required by our case law,[5] to the conclusion of the fact finder that no reasonable hypothesis of innocence remains.

Familiar principles of appellate review require us to examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *See Haskins v. Commonwealth,* 31 Va.App. 145, 149–50, 521 S.E.2d 777, 779 (1999). When reviewing the sufficiency of the evidence presented at the trial of the offense to prove the elements of the crime, we " 'presume the judg-

---

*Commonwealth,* 276 Va. 569, 576, 667 S.E.2d 763, 766–67 (2008); instead, it is reversed and dismissed.

**5.** *See, e.g., Molina v. Commonwealth,* 47 Va.App. 338, 369, 624 S.E.2d 83, 98, *aff'd,* 272 Va. 666, 636 S.E.2d 470 (2006); *Emerson v. Commonwealth,* 43 Va.App. 263, 277, 597 S.E.2d 242, 249 (2004); *Archer v. Commonwealth,* 26 Va.App. 1, 12–13, 492 S.E.2d 826, 832 (1997); *Cantrell v. Commonwealth,* 7 Va.App. 269, 290, 373 S.E.2d 328, 339 (1988).

ment of the trial court to be correct.' " *Davis v. Commonwealth*, 39 Va.App. 96, 99, 570 S.E.2d 875, 876–77 (2002) (quoting *Broom v. Broom*, 15 Va.App. 497, 504, 425 S.E.2d 90, 94 (1992)). We reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Code § 8.01–680. A court considering a challenge to the sufficiency of the evidence does not " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' " *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (quoting *Woodby v. INS*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966)). Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. In doing so, we are mindful that "[g]reat deference must be given to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Walton v. Commonwealth*, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998).

"Where an offense consists of an act combined with a particular intent, proof of the intent is essential to the conviction." *Servis v. Commonwealth*, 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). "Because direct proof of intent [to distribute drugs, or imitation drugs] is often impossible, it must be shown by circumstantial evidence." *Id.* "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Coleman v. Commonwealth*, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Moreover,

[i]n considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt." [*Commonwealth*] v. [*Hudson*], 265 Va.

505, 513, 578 S.E.2d 781, 785 (2003) (internal quotations omitted). Additionally, "circumstantial evidence is not viewed in isolation." *Id.* at 514, 578 S.E.2d at 786. " 'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." ' " *Derr v. Commonwealth,* 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (quoting *Stamper v. Commonwealth,* 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting *Karnes v. Commonwealth,* 125 Va. 758, 764, 99 S.E. 562, 564 (1919))). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Archer v. Commonwealth,* 26 Va.App. 1, 12–13, 492 S.E.2d 826, 832 (1997).

*Emerson v. Commonwealth,* 43 Va.App. 263, 277, 597 S.E.2d 242, 249 (2004).

Here, the facts are not in dispute. Nor in dispute is the realization that the outcome of this case turns on the weight to be accorded the testimony of Detective Gavin, the Commonwealth's expert witness.

Gavin gave three reasons in support of his conclusion that appellant did not possess the substance for personal use: (1) no ingestion devices were found on his person, (2) the packaging was inconsistent with personal use, and (3) the substance was imitation crack, not crack. As to the third point, the majority states the following:

Based on the detective's trial testimony, the Commonwealth suggests that because the substance possessed was an imitation that could not be used for personal purposes, *a fortiori*, it must have been possessed by the appellant for distribution. We disagree. There was nothing in the record to suggest that appellant knew that the substance he possessed, which he could have just purchased from the man in the white shirt seen walking away from the porch, was not cocaine, and furthermore, the detective recognized that a person could possess an imitation controlled sub-

stance under two circumstances: "they were *either* ripped off *or* possessed it to distribute." (Emphasis added).

Gavin's testimony, however, dismantled the hypothesis, and the sole defense theory of the case, that appellant believed he possessed real, not imitation, crack and had indeed been "ripped off." Gavin stated that if appellant was an experienced user he would have purchased crack in bulk rather than in three packages because he would have been able to obtain more of the substance. If, on the other hand, appellant was an inexperienced user, he would not have purchased that quantity of crack because "[t]hat's a lot more than a new cocaine user would attempt." Therefore, be he experienced or be he inexperienced, appellant would not have purchased three packages of the substance, believing it to be crack. As a result, the hypothesis that appellant believed he purchased crack, not imitation crack, for personal use and was "ripped off" was undermined by Gavin's testimony. "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded." *Miles v. Commonwealth*, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). Consequently, since appellant was not "ripped off," the only remaining reasonable hypothesis is that he "possessed it to distribute."

The majority suggests that the evidence failed to exclude another reasonable hypothesis—i.e., "that appellant purchased [the imitation crack] at a quantity discount despite the method of packaging." I would conclude, however, that neither the evidence nor the defense theory of the case supports this suggestion.[6] It is axiomatic that "the Commonwealth need only exclude reasonable hypotheses that *flow from the evidence* ...." *Hamilton v. Commonwealth*, 16 Va.App. 751, 755, 433 S.E.2d 27, 29 (1993) (emphasis added). It is not our task

---

**6.** The majority focuses on the fact that Gavin testified about what "most" crack users do. However, the question is not what is conceivable or possible under any circumstance; the question is what is reasonable under these circumstances. What is reasonable is a question for the fact finder, and we must defer to its findings on appeal.

to engage in a game of "what if," or to attempt to create theories that the evidence does not support. This Court should "not base its holdings on 'what ifs.'" *Newman v. State,* 156 Md.App. 20, 845 A.2d 71, 99 (Md.Ct.Spec.App.2002), *rev'd on other grounds,* 384 Md. 285, 863 A.2d 321 (Md.Ct.App. 2004). Were we to do so there is no limit to the theories that may arise from an inventive mind's eye—e.g., what if appellant found the imitation crack or was merely holding it for the other man the police observed in the area.

I also disagree with the majority's assertion that "appellant's conduct—it is undisputed that appellant tossed the substance away when Officer Riddle approached him—provides further support for the reasonable hypothesis that appellant was a user of cocaine who did not know the substance was not actually cocaine." On the contrary, this conduct is entirely consistent with that of one who possesses the imitation substance, knowing it to be an imitation substance, and fears being charged with the intent to distribute it.

Finally, I disagree with the following statement by the majority:

> With no direct evidence supporting any theory of possession for distribution of imitation narcotics, the Commonwealth invites us to reach the conclusion that if an individual possesses a quantity of imitation narcotics, and there is no evidence to suggest immediate personal ingestion of the substances, the imitation narcotics therefore *must be* possessed for distribution.

I respectfully aver that neither the Commonwealth nor I advocate the adoption of such a blanket or all-encompassing rule of law. Rather, I advocate the appropriate application of the standard of review to *these* facts in *this* case.

Here, the trial judge, sitting as fact finder, assessed Gavin's credibility and weighed his testimony. The trial judge found appellant guilty of the offense. This Court must give deference to the fact finder and, *a fortiori,* his assessment of Gavin's credibility and testimony. I believe that giving proper deference to the fact finder compels us to conclude no reason-

able hypothesis of innocence remains. Accordingly, I am unable to say that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Nor am I able to say that no "reasonable [fact finder] ... could have rejected [the appellant's] theor[y] in his defense...." *Hudson*, 265 Va. at 513, 578 S.E.2d at 785. Therefore, I dissent from Part IIA of the majority opinion.