COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Ortiz, Friedman and White

JOSHUA LUKE CURRY

MEMORANDUM OPINION[*] BY
JUDGE FRANK K. FRIEDMAN

v.      Record No. 0485-23-3

JULY 2, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

(Jessica N. Sherman-Stoltz; Sherman-Stoltz Law Group, PLLC, on
briefs), for appellant.

(Jason S. Miyares, Attorney General; Susan Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.

A jury convicted Joshua Luke Curry of possession with intent to distribute

methamphetamine, second offense, in violation of Code § 18.2-248(C). On appeal, Curry

challenges the sufficiency of the evidence supporting his conviction. He also contends the trial

court erred by improperly restricting his right to cross-examine a witness and limiting his closing

argument. After examining the briefs and record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." *See* Code

§ 17.1-403(ii)(a); Rule 5A:27(a). For the following reasons, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On January 28, 2021, a "confidential informant" working for investigators from the Augusta County Skyline Drug Task Force "contact[ed]" Curry and "order[ed] an undisclosed amount of methamphetamine."[2] Investigators "set up in the area" where they expected Curry to deliver the methamphetamine. Soon thereafter, Curry's vehicle arrived. Investigators stopped the vehicle and detained Curry, the vehicle's driver and sole occupant, before searching the vehicle. There was a backpack in the front passenger seat containing a "digital scale," two closed zippered pouches, and two large plastic boxes. Police opened the pouches and containers and found four "plastic baggies" and a "plastic cylinder," each containing "different amounts" of an off-white, crystalline substance suspected to be methamphetamine. There was also a "smoking device" and additional plastic baggies containing possible methamphetamine "residue." Suspected "LSD" was on a piece of paper wrapped in "tinfoil" inside one of the containers. Investigators "field test[ed]" the suspected methamphetamine and confirmed its identity.

Curry, who had previously been convicted of possession with intent to distribute methamphetamine, told the police that he "usually gets an ounce" of methamphetamine "every few days" from a dealer from Kentucky. He explained that the dealer was "due to come up to this area either that night or tomorrow" and typically carried "at least a pound of methamphetamine." Investigators released Curry without charging him because he agreed to

[1] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] At trial, Curry objected that this evidence was inadmissible hearsay, but the trial court sustained the objection on alternative grounds. Curry does not challenge that ruling on appeal.

- 2 -

"cooperate" with their investigation. A "short time later," Curry stopped cooperating, so police arrested him for possession with intent to distribute methamphetamine, second offense.

Before trial, police sent the suspected narcotics seized from Curry's vehicle to a laboratory for further analysis. Jason Bishop, an expert in identifying controlled substances, examined them and produced a certificate of analysis detailing his conclusions. The certificate stated that Bishop examined "Item 1:" "four . . . plastic bags" and "one . . . plastic container each of which contained an off-white crystal substance." "The contents of the five" containers were "analyzed separately," and each was found to contain methamphetamine, a "Schedule II" controlled substance. Additionally, "Item 1" contained "9.129 grams of substance, including innermost packaging." Bishop also examined "Item 2," the paper inside the tinfoil seized from Curry's vehicle and determined that it contained "lysergic acid diethylamide (LSD)," a "Schedule I" controlled substance.

At trial, Investigator Chris Hilliard, an expert in illegal narcotics trafficking, testified that drug traffickers manufacture methamphetamine "out-of-state" and deliver large quantities to intermediate-level drug dealers. Those dealers repackage the drugs and sell smaller amounts to local drug dealers, who in turn repackage and sell the drugs. Hilliard explained that local methamphetamine dealers typically obtain an ounce of methamphetamine, which is "broken down" into smaller quantities. Dealers usually use scales to measure the drugs and then place them in "plastic baggies" for distribution.

Hilliard opined that "nine or ten grams of methamphetamine," if packaged "in separate bags," is "indicative of distribution." He explained that the average methamphetamine user consumes "one gram a day." Although a user theoretically could buy an ounce of methamphetamine for personal use, Hilliard opined that was unlikely because users typically carry only "small amount[s]" of the drug. Hilliard acknowledged that police found a "smoking

device" in Curry's vehicle and several baggies containing methamphetamine "residue," which he opined were consistent with drug use. Hilliard explained, however, that methamphetamine dealers sometimes use the drug. In addition, Hilliard opined that it was uncommon for users to carry scales and keep their drugs in separate baggies.

The Commonwealth introduced Bishop's certificate of analysis, and Bishop testified and confirmed his findings. On cross-examination, Bishop acknowledged that he could not determine the weight of the methamphetamine found in Curry's vehicle. He explained that the "9.129 grams" listed in the certificate reflected the "gross weight" of the substance combined with its "innermost packaging materials"—*i.e.*, the "four plastic bags" and the "plastic container" in which it was stored. Bishop did not weigh the baggies or plastic container "individually" after removing their contents.

During Bishop's cross-examination, defense counsel asked permission to show Bishop photographs depicting the items seized from Curry's vehicle. Counsel proffered that he intended to point to the "lightest"-looking box in the photograph and ask Bishop whether it was part of the "innermost packaging materials" listed in the certificate of analysis. The trial court allowed counsel to proceed but admonished him not to comment on the evidence by describing the box as the "lightest" because there was no evidence of its specific weight. Defense counsel agreed with the ruling. Then, he pointed to one of the boxes in the photograph and asked Bishop if he knew its weight. Bishop reiterated that he did not because he never weighed any of the containers individually.

The trial court interrupted defense counsel to ask Bishop to clarify which containers listed in the certificate corresponded to the items police seized from Curry's vehicle. Curry objected and requested a side bar. Outside the jury's presence, Curry alleged that the trial court was unfairly "stepping in to help the Commonwealth" by asking questions to clarify what items

comprised the innermost packaging materials specified in the certificate. Curry argued that the questioning interfered with his ability to effectively cross-examine Bishop regarding the quantity of the methamphetamine tested. The trial court held that it was entitled to ask Bishop to specify which containers he examined because Bishop's answers were "confus[ing]." Accordingly, it overruled the objection.

Before the jury, the trial court showed Bishop the photographs depicting the items seized from Curry's vehicle and asked if he could identify those he had described as "Item 1" in his certificate. Bishop was unable to do so because he "was not present when" the photographs were taken. The trial court then concluded its questioning and afforded the parties an opportunity to ask additional questions. Defense counsel declined to do so.

After the Commonwealth's case-in-chief, Curry moved to strike the evidence on two grounds. First, he contended the evidence failed to prove he possessed a Schedule I or II controlled substance because the Commonwealth did not introduce the drugs themselves into evidence. Alternatively, he argued that the evidence sufficed to prove only the lesser-included offense of possession of methamphetamine because Hilliard opined that "some of the evidence . . . was consistent with simple possession." The trial court denied the motion.

During closing arguments, Curry conceded that he possessed the methamphetamine found in his car but asserted that the evidence failed to prove he intended to distribute it. He asserted that because Bishop could not determine the weight of the methamphetamine, itself, Hilliard's expert testimony premised on the quantity of the drugs had limited probative value. In addition, Curry suggested that the Commonwealth's evidence was insufficient to convict because the prosecutor did not introduce the methamphetamine itself into evidence.

The Commonwealth objected outside the jury's presence, arguing that Curry's argument was improper because the Commonwealth was not required to introduce the actual drugs to

prove the elements of the offense. Curry maintained he "should be able to argue" that the Commonwealth must introduce the drugs to prove his guilt. The trial court sustained the objection, holding that defense counsel could "argue that [the drugs] are not here," but he could not "argue that because they're not here . . . [Curry] can't be convicted." Then, without objection, Curry reminded the jury that the Commonwealth did not "bring in the drugs" and instead only introduced Bishop's certificate, which Curry argued was insufficient to prove his guilt.

The jury convicted Curry of possession with intent to distribute methamphetamine, second offense. Curry moved to set aside the jury's verdict, arguing that the evidence proved only the lesser-included offense of possession of methamphetamine. Curry maintained that the evidence failed to exclude his reasonable hypothesis of innocence that he possessed the methamphetamine found in his vehicle only for personal use because the evidence "lacked the typical indicia" of distribution. He emphasized that he possessed only a "small" amount of methamphetamine and "no one testified that they were awaiting to have the items distributed to them." The trial court denied the motion.

On appeal, Curry argues that the evidence was insufficient to prove he intended to distribute the methamphetamine found in the backpack in his vehicle because the evidence did not "exclude the reasonable hypothesis of innocence that [he] possessed the methamphetamine [solely] for personal use." Additionally, Curry argues that the trial court improperly restricted his right to cross-examine Bishop and limited his closing argument.

ANALYSIS

I. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Curry contends that the evidence was insufficient to support his conviction because it failed to disprove his reasonable hypothesis of innocence that he possessed the methamphetamine found in his backpack solely for personal use. He emphasizes that no direct evidence established that he intended to sell or distribute the methamphetamine found in the backpack. In addition, he notes that some of the circumstantial evidence was consistent with personal use, including the smoking device and baggies containing residue. There also were no "firearms, large amounts of currency, . . . multiple cell phones," or other "factors indicating drug distribution."

"Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances." *Secret*, 296 Va. at 228 (quoting *Commonwealth v. Herring*, 288 Va. 59, 75 (2014)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." *Holloway v. Commonwealth*, 57 Va. App. 658, 665 (2011) (en banc) (quoting

- 7 -

*Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)). "Circumstantial evidence is not viewed in isolation." *Id.* (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances . . . may lead a reasonable mind irresistibly to a conclusion." *Pijor v. Commonwealth*, 294 Va. 502, 512-13 (2017) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). Moreover, "[b]y finding the defendant guilty, . . . the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *James v. Commonwealth*, 53 Va. App. 671, 681 (2009) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). That conclusion "is itself a 'question of fact,' subject to deferential appellate review." *Id.*

An "accused's conduct and statements" may be probative of intent to distribute. *Holloway v. Commonwealth*, 56 Va. App. 667, 677 (2010), *adopted on reh'g en banc*, 57 Va. App. 658 (2011). Moreover, expert testimony, "usually that of a police officer familiar with narcotics," may be used "to prove the significance of the weight and packaging of drugs" and whether it is consistent with personal use. *Shackleford v. Commonwealth*, 32 Va. App. 307, 327 (2000). Direct evidence of the exact quantity of a controlled substance, although a significant factor, is not necessary to prove intent to distribute. Rather, evidence that an illicit "substance is packaged for distribution," when combined with "additional evidence . . . preclud[ing] the inference that it was purchased in the packaged form for personal use," may be sufficient. *Holloway*, 56 Va. App. at 677 (quoting *Servis v. Commonwealth*, 6 Va. App. 507, 524 (1988)). For example, we have held that "the presence of a . . . bulk . . . quantity from which smaller packages may have been made up for distribution," *Servis*, 6 Va. App. at 524 (quoting *Monroe v. Commonwealth*, 4 Va. App. 154, 156 (1987)), or the presence of scales or other "paraphernalia . . . used in the packaging process" may negate a defendant's theory of personal use, *Holloway*, 56 Va. App. at 678 (quoting *Hambury v.*

*Commonwealth*, 3 Va. App. 435, 438 (1986)). In such cases, the fact finder may infer "that the quantity seized was what remained from a larger supply held for distribution." *Colbert v. Commonwealth*, 219 Va. 1, 4 (1978)).

The totality of the circumstances—including the context of Curry's arrest, his statements to police, and the manner in which the methamphetamine in his possession was packaged—allowed the factfinder to conclude he intended to distribute the drugs. To begin, the record establishes that Curry was arrested while delivering methamphetamine to a "confidential informant," who had arranged to buy methamphetamine from Curry. When police searched Curry's vehicle, they found a backpack containing methamphetamine. From that evidence alone, the jury could infer that Curry intended to distribute the methamphetamine he possessed to the informant. Additionally, Hilliard opined that local methamphetamine dealers typically obtain an ounce of the drug from "out-of-state" narcotics traffickers, use scales to divide the methamphetamine into smaller quantities, and then place the drugs in separate "plastic baggies" for distribution. Consistent with that testimony, Curry told police that he usually bought an ounce of methamphetamine "every few days" from an out-of-state dealer. In addition, Curry possessed a scale, and the methamphetamine found in his backpack was packaged in separate baggies, as Hilliard had described.

Although the Commonwealth did not establish the exact weight of the methamphetamine, the totality of these circumstances permitted the jury to conclude that "the quantity seized was what remained from a larger supply held for distribution." *Colbert*, 219 Va. at 4. Moreover, even though police found a "smoking device" that was consistent with personal drug use, Hilliard opined that methamphetamine dealers sometimes use the drug, and he opined that users usually do not carry

scales or keep their drugs in separate baggies. Accordingly, the evidence was sufficient to demonstrate that Curry possessed the methamphetamine with the intent to distribute.[3]

II. The Trial Court Did Not Err in its Handling of Cross-Examination.

An abuse of discretion standard is applied to a trial court's limitation on a defendant's ability to cross-examine a witness. *Spruill v. Commonwealth*, 221 Va. 475, 485 (1980). However, a trial judge is not permitted "to interfere with appellant's constitutional right 'substantially and fairly' to cross-examine his opponent's witnesses under the confrontation clause of the sixth amendment." *Smith v. Commonwealth*, 15 Va. App. 507, 511 (1992).

"It is not to be inferred from what has been said that a trial judge may not ask questions of a witness either on his examination in chief or on cross-examination. The practice is common and perfectly permissible." *Mazer v. Commonwealth*, 142 Va. 649, 655 (1925). "A trial judge has a right and, indeed, at times a duty to question a witness provided he does not disclose bias in so doing." *Goode v. Commonwealth*, 217 Va. 863, 865 (1977). "[A] trial judge, in order to avoid invading the province of the jury and thereby prejudicing an accused, should refrain from indicating in any way his views upon the weight or quality of the evidence." *Id.* A trial judge does not err by asking questions of witnesses who are testifying as long as the questions are reasonable and unbiased. *See Va. Bd. of Med. v. Hagmann*, 67 Va. App. 488, 507-08 (2017).

---

[3] Curry also contends that because "[t]here was no evidence regarding [his] physiology or tolerance levels" and because the methamphetamine he possessed might have contained adulterants, it is possible that he "possessed the amount he did to ensure he would have enough of a percentage of [the drug] to achieve desirable highs." Curry, however, failed to preserve those specific arguments for appellate review because he did not raise them in his motion to strike or motion to set aside the jury's verdict. *See Commonwealth v. Bass*, 292 Va. 19, 33 (2016) (holding sufficiency challenges unpreserved in a jury trial unless timely raised in motions to strike or a motion to set aside verdict). Accordingly, those arguments are waived. Curry does not invoke Rule 5A:18's ends of justice or good cause exception, and we will not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023) (citing *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc)).

- 10 -

Curry argues that the trial court interfered with his cross-examination of Bishop regarding the weight of the methamphetamine found in Curry's backpack, thus violating his Sixth Amendment right to cross-examine the government's witnesses.[4] Curry asserts that he sought to elicit that Bishop could not ascertain "the weight of the methamphetamine by itself" because "[t]he weight had only been obtained in combination with the innermost packaging" materials. In addition, Curry attempted to "point out" that the "innermost packaging materials" comprised both "the lightweight baggies the suspected narcotics were wrapped in" as well as the "much heavier plastic containers" seized from Curry's backpack. Curry asserts that the trial court prevented him from questioning Bishop on those points by interrupting him to ask clarifying questions.[5]

The context in which the disputed exchange occurred is important here. Just prior to the trial court's questions to Bishop, Curry's counsel commented on the evidence during cross-examination of Bishop by describing certain evidence, without any basis to do so, as "the lightest of the four containers in the picture . . . ." The trial court responded that, "I'm not going to accept the fact that that's the lightest container. I'll let the jurors draw their own conclusion."

Shortly thereafter, Curry's counsel stated that he had one "last question." At this point, the trial court chimed in and asked Bishop, "Innermost packaging means what?" The trial

_____

[4] In the trial court, Curry never argued that his Sixth Amendment right to cross-examine was violated. He raises this challenge for the first time on appeal. In the trial court, Curry objected on the ground that the trial court was improperly assisting the Commonwealth by asking clarifying questions. *See Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998) (finding Rule 5A:18 applies to constitutional claims).

[5] Additionally, Curry argues that the trial court's "interruption and interference in that line of questioning was likely very distracting for the jury," and "took away from the point" he intended to make. We do not consider this argument because Curry did not raise it in the trial court. Rule 5A:18. Curry does not invoke Rule 5A:18's ends of justice or good cause exceptions, and we will not do so sua sponte. *Spanos*, 76 Va. App. at 827-28 (citing *Edwards*, 41 Va. App. at 761).

- 11 -

court's question related to Curry's prior line of questioning and the weight associated with the drugs. Further, the question went directly to Curry's theory of the case and his argument to the jury: that he did not have the intent to distribute because the amount of methamphetamine, when combined with the innermost packaging, was a relatively small amount, suggesting he only possessed methamphetamine for personal use.

The trial court asked a few more clarifying questions of Bishop at which point Curry's counsel objected, arguing the trial court was asking questions the Commonwealth should be asking. The trial court stated, "I'm going to tell you that you opened this line of questioning. You have confused the Court so I wish to ask the . . . witness what he is telling me and the jury. . . ." The trial court then removed the jury from the courtroom, so it could further consider Curry's objection outside the presence of the jury. Curry again reiterated that he felt that the trial court was attempting to help the Commonwealth by asking the questions it did. Curry did not provide any authority to the court supporting his position.

The trial court responded that Curry had "opened this area" and "I think [Bishop] had confused me certainly and I do not want you confusing the jury as to what it is that he's testifying to so I asked that question." The trial court went on to say that "I'm not stepping in to help the Commonwealth. I am stepping in to understand what it is that the witness is testifying to." The trial court further explained, "If I wish to ask questions because I have been confused by your questions and I think the witness is confused by your questions, I can ask those questions." The trial court reminded both sides that they were free to ask any questions they wish. After the jury returned, the trial court asked additional clarifying questions. When given an opportunity to ask additional questions of Bishop, Curry's counsel declined.

The trial court did not abuse its discretion when it asked clarifying questions of the Commonwealth's witness, nor did it improperly limit Curry's cross-examination in violation of

the Sixth Amendment. Curry was permitted to ask any questions he wished as the trial court indicated. Curry declined to ask further questions after the trial court completed its questions. Curry does not argue that there were certain questions he was not allowed to ask, rather he argues the trial court committed error by asking clarifying questions because that questioning interrupted Curry's cross-examination. However, longstanding caselaw from our Supreme Court has indicated that a trial court may ask a witness questions in certain circumstances. *Maze*, 142 Va. at 655. This Court has recently found that a trial court may ask questions if "reasonable" and "unbiased." *Hagmann*, 67 Va. App. at 507-08.

Here, we find that the trial court's questions were both "reasonable" and "unbiased" under the circumstances, and thus the trial judge did not abuse his discretion by asking the Commonwealth's witness questions to clarify the evidence. The trial court's decision to ask clarifying questions is particularly reasonable considering its express finding that prior questioning had created confusion for the court and likely the jury. For these reasons, we decline to find that the trial court abused its discretion by asking clarifying questions of a witness, where the questions were both reasonable and unbiased.[6]

---

[6] Even if the trial court erred by asking clarifying questions, any such error was harmless because there was significant evidence in the record demonstrating Curry's intent to distribute. Curry was initially arrested attempting to sell methamphetamine to a confidential informant. Curry had methamphetamine in his backpack packaged in numerous small baggies, along with a digital scale. Curry further admitted he got one ounce of methamphetamine every few days from a drug dealer in Kentucky. Based on all this evidence, we are confident the jury would have still convicted Curry even if the trial court had not asked clarifying questions about the weight of the drugs and innermost packaging. *See Commonwealth v. White*, 293 Va. 411, 421-22 (2017) ("The proper inquiry for constitutional harmless error is 'whether the [jury] *would have* returned the same verdict absent the error.'" (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006))). Even if the trial court erred, the error would have nonetheless been a minor error, where Curry does not point to any specific questions that were biased or unreasonable, nor does he state a single question the court prevented him from asking.

III. Closing Argument

The trial judge must use proper discretion in determining the appropriateness and length of closing arguments. *See Griffin v. Commonwealth*, 22 Va. App. 622, 623 (1996). "[T]he conduct of a trial is committed to the trial judge's discretion, and absent evidence of an abuse of this discretion, we will not disturb his rulings on that subject." *Justus v. Commonwealth*, 222 Va. 667, 676 (1981).

Curry argues that the trial court abused its discretion by preventing him from arguing to the jury that the Commonwealth had to introduce the methamphetamine itself to prove his guilt. Citing no authority, Curry maintains that the argument was proper and asserts that the trial court's ruling prejudiced his defense.[7]

While we do not dispute Curry's assertion to the trial court that the practice of bringing illegal drugs to court for the factfinder to observe personally has been done before and *may* be done in the future, there is simply no legal authority that it *must* be done for the Commonwealth to prove its case. Because there is no legal authority in support of Curry's position, the trial court did not abuse its discretion when it sustained the Commonwealth's objection during Curry's closing argument and ruled that "you [can]not argue that [the Commonwealth] had to bring the drugs into the courtroom." The trial court clarified that Curry "can say that there are not drugs here[,]" but Curry cannot say that because the drugs are not in the courtroom, the Commonwealth failed to prove its case as a matter of law. For these reasons, the trial court did not err in sustaining the Commonwealth's objection during Curry's closing argument.

---

[7] Curry also argues that the "disruption" caused by the Commonwealth's objection and the trial court's ruling reduced the effectiveness of his closing arguments and, thus, prejudiced his defense. Curry, again, failed to preserve this specific argument for appellate review because he did not raise it in the trial court. Rule 5A:18. Curry does not ask us to apply the ends of justice or good cause exceptions to Rule 5A:18, and we decline to do so sua sponte. *Spanos*, 76 Va. App. at 827-28 (citing *Edwards*, 41 Va. App. at 761).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*